# JOHN SCHMIDT
## *v.*
# J. LOUIS PFAU, Jr.

*Filed at Springfield September 23, 1885.*

1. EVIDENCE—*relevancy—in suit to recover for services in the management of a business—mismanagement on the part of the agent as a defence.* In a suit to recover compensation for services as manager of a foundry and machine shop, in which the defence sought to recoup damages resulting from the alleged neglect of duty and mismanagement of the business on the part

of plaintiff, producing a failure in the business, the plaintiff, in his testimony, incidentally stated as his opinion that the business was terminated because of his refusal to work for $300 a year. On cross-examination he was asked if the true reason of the closing of the business was not because the firm had lost money from the beginning to the end, which the court, on objection, refused to allow: *Held,* no error in refusing to allow the question to be answered, as the subject matter of the inquiry could not have had any legitimate bearing upon the real issue in the case.

2. SAME—*as to the manner of showing mismanagement by the agent in such case.* On an issue as to the plaintiff's right to recover for services as general manager of defendants' business in the carrying on of a foundry and machine shop, in which damages are sought to be recouped for mismanagement and neglect of duty on the part of the plaintiff, the burden of proof to establish the defence is upon the defendants, and the particular acts of misconduct or omissions of duty should be specifically pointed out, so as to enable the plaintiff to meet the same by direct proof. Evidence of the reputation of the work done is not admissible to establish such defence, as it might arise from other causes not attributable to the plaintiff.

3. SAME—*opinions of witnesses on that subject.* On an issue as to the improper or unskillful management of the business of a firm by an employe suing for his services, it is not proper to allow one of the defendants, as a witness, to give his opinion as to the effects of the plaintiff's management upon the profits and losses of the firm during the time he controlled its affairs.

4. SAME—*improper keeping of books of account—how to be shown.* For the purpose of showing that a plaintiff suing for wages had improperly kept defendants' books, they produced an exhibit made by the plaintiff of the partnership accounts, and asked an accountant who had examined the books, this question: "Mr. S., I place in your hands a statement, and I will ask you how that statement corresponds with the result of your examination of the books as to the indebtedness, or the amount of money these partners of the Ætna Iron Works put in the business:" *Held,* that the question was improper, both in form and substance. The proper mode of proving an improper keeping of the books of a firm by its book-keeper, is to ask the witness whether, upon his examination of the same, he found any errors, and if so, to state what they were.

5. SAME—*availing of statements that are favorable, and rejecting such as are not.* A party may rely on admissions made by the other party, in his testimony, against his interest, without being concluded by other statements made in exoneration of his liability, or in his favor. The statements of a party made against his interest may be accepted and acted upon by the jury as true, while others made in his favor, though at the same time and as part of the same conversation, may be rejected.

6. SAME—*cross-examination as to matter not germain to evidence in chief.* In an action against a firm for services as manager and book-keeper,

the plaintiff's father, who was a member of the firm, in testifying on behalf of the plaintiff, stated that the latter spent most of his time in the employment of the firm. On cross-examination the witness was asked if he thought during the year 1877 his and his son's profits in another business distinct from that of the defendant firm, or the witness' share of the profits therein, amounted to $2000, the object being to show that the business of the witness, in which the plaintiff had an interest, was profitable, while that of the defendants was not,—leaving the jury to infer that the plaintiff fostered the business of himself and father to the neglect of that of the defendants: *Held*, that the question was not proper on cross-examination, and if allowable at all, was matter in chief.

7. AGENT—*whether liable to his principal for errors of judgment in the management of the business of the latter.* Where an agent or manager of another is clothed with a general discretion in the management of the business intrusted to him, he will not be held responsible for an honest mistake in its exercise, provided he acts with reasonable skill and ordinary diligence. In such case there is no implied guaranty of the success of the business on the part of the agent, and if losses occur, the principal must bear them.

8. LIMITATION—*when the statute begins to run—service by the year.* Where services are performed by one for another by the year, without any agreement as to the time for their payment, the law will presume them as payable at the end of each year, and the Statute of Limitations will not run against the first year's services until the end of that year.

9. SAME—*admission of indebtedness as taking case out of the statute.* An admission of a party that he owes another for services rendered, within five years before action brought, will take the case out of the Statute of Limitations, although the amount to be paid for such services may not have been fixed.

10. INSTRUCTIONS—*of a proper reference to the evidence.* An instruction based upon admitted facts or facts not disputed, is not erroneous merely from the fact it fails to contain the words, "if you believe, from the evidence," such facts. Such reference to the evidence is necessary only when the facts hypothetically stated are controverted.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Mr. W. W. BERRY, for the appellant.

Messrs. CARTER & GOVERT, for the appellee.

Mr. Chief Justice Mulkey delivered the opinion of the Court:

J. Louis Pfau, Jr., the appellee, brought an action of assumpsit to the March term, 1883, of the Adams county circuit court, against John Schmidt, (the appellant,) John L. Pfau, Sr., and Theodore Brittenberger, as partners, lately doing business under the firm name of "Ætna Iron Works," to recover for work and services claimed to have been rendered by him as general manager of the company, from the 25th day of February, 1877, to the 25th day of February, 1880. There was no service on Brittenberger. Defendant Pfau admitted the justness of plaintiff's claim, and consented that judgment might be rendered against him. Pleas of the general issue, Statute of Limitations, and set-off, were filed by Schmidt, and the cause was tried before the court and a jury, resulting in a verdict and judgment in favor of plaintiff, for $3600, which was affirmed by the Appellate Court for the Third District, and Schmidt alone appealed to this court.

The partnership in question was formed in 1875, for the purpose of carrying on a foundry and machine shop at Quincy, Illinois. At that time appellant was engaged in the practice of medicine, and Pfau, Sr., was carrying on other branches of business on his own account, namely, the manufacture of hot-air furnaces, and the galvanized iron and tin and stove business, and the evidence tends to show that these two members of the firm,—particularly the latter,—were expected to give but little, if any, of their personal attention to the business of the company. The understanding seems to have been, that in discharging their share of the labor and duties pertaining to the business, they were to be respectively represented by their sons, the appellee, and Albert Schmidt, a young man then about eighteen years of age, under the general supervision of Brittenberger, who was to give his personal attention to the affairs of the concern. Under this

32—114 Ill.

arrangement neither of the sons was to receive from the company any compensation for his services. The business of the partnership was continued under this arrangement until the latter part of 1875, when Brittenberger abandoned the concern, and its management thereafter devolved mainly upon appellee, without any other or different understanding, and it so continued until the 25th of February, 1877, when, as claimed by appellee, it was mutually agreed between himself, his father and appellant, that young Schmidt should retire from the business, and that appellee should take charge of it as chief manager, and give to it his undivided time and attention.

That appellee did serve as manager of the concern for three years, from the 25th of February, 1877, is conceded. But it is claimed by appellant, that appellee's compensation was fixed at $300 and traveling expenses for the first year, and that by a subsequent agreement he was to receive after the first year, in lieu of a fixed salary, a commission on sales—ten per cent on small jobs and three on large ones. This alleged agreement, so far as it relates to compensation, is positively denied by appellee, the latter claiming that that matter was left open and unsettled. It is also claimed by appellant that appellee did not give to the business his entire time and attention, as he had agreed to do, and that by reason of its neglect, and his unskillfulness and bad management, the company sustained heavy losses, and the business proved a failure. These several claims of the appellant are distinctly denied by appellee, and the evidence relating to the subject is conflicting and wholly irreconcilable. Such being the case, it is hardly necessary to add that the issues thus raised must be regarded as conclusively settled in favor of appellee by the judgment of affirmance in the Appellate Court. The errors relied on for a reversal, here, question the correctness of the ruling of the trial court upon the admissibility of evidence, and in the giving, refusing and modification of instructions.

It appears that on the 25th of February, 1880, the parties met at their business office for the purpose of a general settlement, at which it was determined to stop and wind up the business. Appellee, in speaking of this meeting in his testimony, incidentally stated as his opinion that the partnership business was thus suddenly terminated because he told appellant he would not work for $300 a year. Upon his cross-examination he was asked this question : "Was not the true reason of this firm quitting business that it had lost money from beginning to the end ?" The court, upon objection, held the question improper, and this is assigned for error. The ruling of the court in this respect affords no ground for reversal. The answer to the inquiry, let it have been the one way or the other, would have had no bearing upon the merits of the controversy or the issues submitted to the jury. The main question for their determination was, what, if anything, did the defendants owe the plaintiff on account of his services prior to their stopping business. The answer of the witness, if responsive to the question, would, at most, have been but the expression of an opinion upon a mere collateral matter, and on this ground, the question, to say the least of it, was of doubtful propriety, and, consequently, within the discretion of the court to allow it or not, as it thought proper. The parties had a clear right to stop business at the time they did, without regard to the motives or reasons that induced them to do so, and hence any evidence on that subject would more than likely have diverted the attention of the jury from the real issues involved. In any view, we perceive no error in disallowing the question.

It is also claimed that the court erred in refusing to permit Pfau, Sr., to answer, on cross-examination, the following question : "Do you think during 1877 the profits of yourself and Louis, or your share of the profits, amounted to $2000 ?" The object of this inquiry was to show that the business of Pfau, Sr., in a part of which appellee had an interest, was

successful, while that of the Ætna Iron Works was unprofit-
able, leaving it to be inferred by the jury, that appellee had
fostered the business of himself and father to the neglect of
that of the firm.   Waiving the competency of the evidence
offered, which, to say the least of it, is extremely doubtful,
we do not think it was proper on cross-examination.   It was
not germain to anything called out on the direct examination,
and if admissible at all, it was clearly matter in chief.   The
court therefore ruled correctly in holding it improper.   The
only pretence for asking it is the witness' statement, on re-
direct examination, that appellee "spent pretty much all his
time" in the employment of the firm.   Upon what principle
this statement would authorize appellant to go into a general
inquiry as to what profits the witness, or the witness and his
son, were realizing in a wholly different business, and one in
which the appellant had no concern, is not perceived.   There
is clearly no merit in the objection.

It is further objected, the court erred in not permitting
appellant to prove the general reputation of the work done at
the Ætna Iron Works during the years covered by appellee's
service.   We are aware of no precedent for the admission of
such evidence under like circumstances, and are satisfied that
the general principles upon which it is admissible at all, have
no application to the case in hand.   The issues in it are very
simple.   The plaintiff sued to recover for three years' services
as business manager of the defendants.   One of the defend-
ants admits the justness of the claim, and the other denies it.
The appellant says, "True, you worked for us that period of
time, but you neglected our business, and did not do your
work properly, by reason of which we have sustained dam-
ages, which we seek to recoup in this action."   Upon the
issue thus tendered by appellant, the burden was upon him,
and it could not be established by evidence of the character
offered.   If, as claimed, the plaintiff neglected the business
of the firm or did their work improperly, that was a fact sus-

ceptible of direct proof, and as a matter of justice to him, the particular acts of improper conduct or omissions of duty on his part should have been specifically pointed out, so as to have enabled him to meet the charge in an equally direct and specific way. Suppose it be conceded the reputation of the products of the establishment for the period in question was bad, it does not necessarily follow that it resulted from the plaintiff's neglect of duty. Moreover, the bad reputation of the work may have been undeserving, or it may have been caused by the original improper construction of the establishment, or the character of the machinery put into it. This bare suggestion shows the impropriety and danger of admitting such evidence, even if it were not objectionable on the ground already stated. The probable effect of admitting such testimony, would be to incumber the case with numerous collateral issues but remotely bearing upon the real merits of the controversy.

At the settlement of the 25th of February, 1880, appellee made a statement in writing, showing the state of the partnership account between appellant and Pfau, Sr., which is annexed to his testimony as "Exhibit A," one item of which, as already seen, was placed there by appellee under protest. Counsel for appellant, referring to this statement, asked the witness Schanz, who had also prepared a statement relating to the condition of the partnership accounts, the following question: "Mr. Schanz, I place in your hands a statement, and I will ask you how that statement corresponds with the result of your examination of the books as to the indebtedness, or the amount of money these partners of the Ætna Iron Works put in business." The court, on objection, held the question improper, and its ruling in this respect is assigned for error. We do not think the point is well taken. On the contrary, we regard the question improper, both in form and substance. If appellee committed any errors in keeping the partnership books, by which appellant sustained loss, it would

have been permissible to show that fact; but the proper course in such case would have been to ask the witness whether, upon his examination of the books, he found any errors, and if so, to state what they were. Yet, even if the court had erred in disallowing this question, the appellant was not prejudiced by it, for this witness seems to have testified fully as to the condition in which he found the books, and as to appellee's method of keeping them, and the whole matter was before the jury.

Again, it is objected the court erred because it would not permit appellant to give his opinion as to the effects of appellee's management upon the profits and losses of the concern during the three years he controlled its affairs. The court clearly ruled properly on this question. As already indicated, if appellee had been guilty of any improper conduct in the management of the company's affairs, it was a matter susceptible of proof, and the evidence should have been directed to that issue. Perilous, indeed, would be the position of a general manager, if he could be held personally responsible for a failure of the business, upon the mere opinions of witnesses as to the character of his management, based largely, perhaps, upon the very fact of the failure itself. Where one is clothed with a general discretion in the management of the business of another, as was the case here, he will not be held responsible for an honest mistake in its exercise, provided he has acted with reasonable skill and ordinary diligence. In such case there is no implied guaranty of the success of the business on the part of the agent, and if losses occur, the principal must bear them.

In respect to the remaining exceptions not specially noticed, it is sufficient to say, in general terms, we do not regard any of them well taken. They are, in many respects, much like those considered, and the general observations already submitted apply with equal force to them.

At the instance of the plaintiff, the court gave to the jury the following instruction:

"In respect to the Statute of Limitations, set up by the defendant John Schmidt, the jury are instructed that if the plaintiff performed the labor and services for which the suit is brought, by the year, at the request of the defendants John Schmidt and John L. Pfau, as two of the partners in the Ætna Iron Works, and no time was fixed as to when such labor and services were to be paid for, the law would presume that they were to be paid for at the end of the year; and if the first year ended any time after the 21st day of February, A. D. 1878, then no part of such labor and services would be barred by the Statute of Limitations, and the jury should find that issue for the plaintiff."

The instruction is objected to on two grounds: First, it is said by counsel, "it does not connect itself with the evidence anywhere or by any terms, but simply states that if the plaintiff performed the labor and services for which the suit is brought, by the year, at the request of the defendants, then the law is so and so,"—or, more shortly put, as we understand this branch of the objection, the instruction does not contain the usual formula, "*if the jury find, from the evidence,*" etc. The omission of these words, under the circumstances, we regard as wholly unimportant. It was a conceded fact that appellee worked for the company three years, and that there had been no settlement, or attempt at settlement, between the parties, on account of his services, until he stopped work altogether on the 25th of February, 1880, and appellant himself swears that it was the original agreement to pay appellee $300 a year. Assuming this to be true, there was no ground whatever for interposing the Statute of Limitations, for the five years did not commence running as to the first year's service until the 25th of February, 1878, and the suit was commenced on the 21st of February, 1883. Where an in-

struction, based upon a fact conceded by the party against whom it is given, properly declares the law, upon the hypothesis that the admitted fact is true, it will be no objection to the instruction that it does not contain the words, "*if you believe, from the evidence.*" The same rule applies in any case where an instruction sets forth a state of facts hypothetically, about which there is no controversy in the evidence. It is only where the facts, hypothetically stated, are controverted by the party against whom the instruction is given, that the formula, "*if you believe, from the evidence,*" etc., becomes important.

It is claimed, in the second place, there is no evidence in the record upon which to base this instruction. This claim is clearly without any foundation, as is fully shown by what we have already said. In addition to this, it is an undeniable fact that at the meeting of the parties on the 25th of February, 1880, the claim of appellee for his services was conceded by all of them as an existing indebtedness, and the only controversy was as to the amount. The appellant on that occasion, according to the testimony of appellee, in referring to this claim, said: "This matter of salary has not been settled yet,—*we owe you for three years' salary,*"—and we fail to find any denial in the record of the statement thus attributed to appellant, and it is hardly necessary to add, this admission of appellant clearly took the case out of the statute, even if his salary had been payable monthly. The answer of appellant to this is to the effect that if his testimony is looked to for the purpose of proving any particular fact, it must be accepted as a whole, and for all purposes. This view of the law is clearly unsound, and finds no support from English or American authority. It is a familiar principle of the law of evidence, as it obtains in this country and in England, that the statements of a party made against his own interest may be accepted and acted upon by the jury as true, while others made in his favor, though at the same time and as part of

the same conversation, may be rejected as unworthy of belief. In such case, all that the witness has said relating to the particular matter in question goes to the jury for their consideration, but when considered, they may believe such parts of the statement as seem reasonable and probable, and reject the balance. 2 Best on Evidence, sec. 520.

There are other exceptions to the rulings of the court upon the instructions discussed in appellant's brief, but we do not regard any of them as well taken, and as the present opinion is already extended beyond desirable limits, we do not deem them of sufficient importance to discuss them in detail.

The judgment will be affirmed.

*Judgment affirmed.*