NARDI & CO., INC., Plaintiff-Appellee, *v.* ROBERT A. ALLABASTRO, Defendant-Appellant.

(No. 57301; ▮▮▮▮▮▮)

First District (2nd Division)—May 28, 1974.

Richard B. Harty, of McGrath & Harty, of Wheaton, for appellant.

Jonathan T. Howe, of Chicago (Jenner & Block, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Nardi & Co., Inc., an Illinois corporation, filed a suit against Robert A. Allabastro; and in an amended complaint, it alleged the breach of an express written contract to pay a $40,000 real estate brokerage commission. Defendant appeared and denied plaintiff's material allegations. Thereafter, without a jury, the trial court heard evidence and found that plaintiff was entitled to recover $25,000 in damages from the defendant. The sole issue in this appeal is whether in this action ex contractu the trial court could enter a judgment quantum meruit in favor of the plaintiff.

I.

Early in 1965, Robert A. Allabastro, a real estate broker who specialized in acquiring vacant real estate for industrial development, purchased from three separate farm families options to buy 200 acres of contiguous farmland in Du Page County, Illinois. Allabastro planned to have the land rezoned and then sell it at $10,000 per acre for development of an industrial park. As is common in such ventures, Allabastro encountered problems; and as a result, he met Robert K. Bley, a licensed real estate broker then employed by Nardi & Podolsky, an Illinois licensed real estate brokerage corporation that dealt primarily in the development of industrial sites. Nardi & Podolsky was the predecessor corporation to the plaintiff in this case, Nardi & Company, Inc.

After several meetings and conversations, Allabastro agreed with Bley that Nardi & Podolsky could be his exclusive agent to sell the 200 acres. Accordingly, on March 7, 1968, the agreement was signed; and under its terms, several prospective purchasers (not including Winthrop Lawrence, Inc.) were submitted to Allabastro, one of which made an offer to purchase the 200-acre parcel, treating it as having a net acreage of 170 acres. This feature of the offer made it unacceptable to Allabastro. Therefore, he contacted William Klebold, a District of Columbia mortgage broker, and through him began negotiations for sale of the land to Winthrop Lawrence, Inc. In discussing what should be the commission, Allabastro expressed to Klebold the willingness to pay $100,000 if he got his price: $2,000,000. Thereafter, negotiations with Winthrop Lawrence continued and culminated with an agreement that if adequate financing could be obtained, it would purchase the 200 acres for $2,000,000. It was Winthrop Lawrence's plan to resell the land in smaller parcels to companies in need of industrial sites.

After the Winthrop Lawrence agreement was formalized, Bley and Milton Podolsky, a partner, stockholder and employee of Nardi & Podolsky, worked to obtain the required financing. Through their efforts, Equitable Life Assurance Society of America agreed that if Winthrop Lawrence had the services of a real estate broker experienced in the sale of industrial sites, it would make a mortgage commitment. Nardi & Podolsky was qualified to meet this requirement of the mortgage lender. The firm agreed to handle the contemplated parceling and resale of the 200 acres. As a consequence, Equitable made the mortgage commitment.

On August 28, 1968, Allabastro and Bley, in the presence of business associates, met to discuss the impending sale of the land to Winthrop Lawrence and the compensation for Bley and the firm that employed him. Allabastro agreed that Bley had been of considerable assistance in obtaining the mortgage and in activities related to the potential sale. In the course of the discussion, Allabastro pointed to the contemplated resales of the land by Winthrop Lawrence, resales which he thought would produce as much as $500,000 in real estate brokerage commissions. As a result, it was agreed that Bley and Nardi & Podolsky were to be paid a sum certain, in the event of a sale; or a sum certain if the firm became exclusive agents for resale of the land. On the same day of the meeting, Allabastro wrote Bley the following letter:

August 28, 1968

"Mr. Robert K. Bley
Nardi and Podolsky, Inc.
221 North La Salle St.
Chicago, Illinois 60601

Dr. Mr. Bley:

In the event a sale is consummated to Lamot Dupont Copeland or Winthrop Lawrence, Inc. or their nominee for the 200 acres of land fronting 1,615 feet on Devon Avenue and going back in depth to Thorndale Road, west of Route 83, Du Page County, Illinois, I agree to pay to Robert K. Bley and Nardi and Podolsky, Inc. a real estate commission of Fifty Thousand Dollars ($50,000.00).

In the event an exclusive real estate agreement is entered into between the above purchasers and Nardi and Podolsky, Inc. for the development of this property, Robert K. Bley and Nardi and Podolsky, Inc. will only be entitled to a real estate commission for the sale of Twenty Five Thousand Dollars ($25,000.00), this commission to be paid upon consummation of sale and passing of title.

Yours very truly,
/s/ *Robert A. Allabastro*
Robert A. Allabastro

It is further agreed that Robert Allabastro shall be entitled to commissions equal to 20% of all commissions collected by Nardi and Podolsky for sale of said land. Total commission not to exceed Fifty Thousand Dollars ($50,000.00).

/s/ *Robert Allabastro*
Robert Allabastro
/s/ *Robert K. Bley*
Robert K. Bley"

Neither Bley nor Nardi & Podolsky became exclusive agents to resell the land. In fact, Winthrop Lawrence changed its plans. Instead of purchasing the 200 acres for resale, it consummated its deal with Allabastro by purchasing his option rights to the 200 acres for $2,000,000 and sold them to the Tremmel-Crow Corporation, one of the prospective purchasers who had been shown the land by Nardi & Podolsky. After the deal was closed, but from proceeds of the sale on behalf of Allabastro, Klebold was paid a commission of $60,000.

Nardi & Podolsky was not paid any compensation. Then, relying on the first paragraph of Allabastro's letter of August 28, 1968, it submitted an invoice for its commission. The invoice was not paid; this suit was filed. The trial court heard evidence by testimony of the persons immediately involved and exhibits received on behalf of plaintiff and defendant. It found in plaintiff's favor and that plaintiff was "* * * entitled to damages on a quantum merit basis [*sic*] against the defendant in the amount of Twenty-Five Thousand Dollars ($25,000.00)."

Thereafter, in a post-trial motion, defendant moved to arrest the judgment or, in the alternative, for a new trial on the ground that it was

error for the trial court to grant plaintiff a judgment, quantum meruit, without amendment of its pleading, when its complaint was a suit ex contractu to enforce an express written contract for payment of a specific real estate commission. The trial court denied the motion and entered judgment on the findings.

## II.

■■ In the law, the expression "quantum meruit" means literally "as much as he deserves." (*Redd v. L & A Contracting Co.* (1963), 246 Miss. 548, 151 So.2d 205, 207; 73 C.J.S. 1269.) It is an expression that describes the extent of liability on a contract implied by law. (See *Derr v. Moody* (1969), 5 Conn. Cir. 718, 261 A.2d 290, 293.) This liability is predicated on the reasonable value of services performed. Thus, the basis for recovery quantum meruit is receipt by a defendant from a plaintiff of a benefit which it is unjust for him to retain without paying for it. *Dunn v. Phoenix Village, Inc.* (W.D. Ark. 1963), 213 F.Supp. 936, 952.

In this case, defendant admitted, when he testified, that in his attempts to sell the land on which he had option rights, he benefited from the services of Bley, plaintiff's employee and agent. Bley and Milton Podolsky testified and described the work they did for defendant. In fact, it was to provide for Bley's compensation that defendant wrote the letter of August 28, 1968. Defendant's counsel, in summation of defendant's position before the trial court, conceded defendant's indebtedness to Bley. This concession is important because in all his dealings with defendant, Bley was plaintiff's employee and agent. It is well established that rights acquired by an agent while acting for a disclosed principal inure to the benefit of the principal. *Kost v. Peterson* (1971), 292 Minn. 46, 193 N.W. 2d 291.

This reminds us of the old Illinois case where a horse thief, for whose capture Montgomery County offered a $300 reward, escaped and fled to the State of North Carolina where he was arrested and confined on another charge. Robinson, who had been victimized by the thief, employed White, paid his expenses and sent him, assisted by extradition papers, to bring back the culprit. White did so; and thereafter claimed the reward for which he obtained a judgment against the county. On appeal, it was argued that Robinson was not entitled to the reward because White had made the recapture. The Supreme Court, however, held that since White was Robinson's agent in returning the horse thief, the county had to pay Robinson the reward. *County of Montgomery v. Robinson*, 85 Ill. 174.

■■ In our judgment, this old decision controls this point of the case before us. Bley was plaintiff's agent when defendant received the benefit

of his labor. Defendant, in the trial court, as a witness and by his lawyer, conceded being indebted to Bley. This was a concession of indebtedness to the plaintiff. (Compare *Kirby v. Wilson,* 98 Ill. 240.) It was also a concession of liability, not on the express contract sued upon by the plaintiff but on a contract implied in law. (See *Wyche v. Perrin* (Civ. App. Texas 1950), 228 S.W.2d 330.) In such a case, and without amendment of the pleadings, there can be recovery quantum meruit. (*Moreen v. Estate of Carlson,* 365 Ill. 482, 6 N.E.2d 871; *Anderson v. Biesman & Carrick Co.,* 287 Ill.App. 507, 4 N.E.2d 639; compare *First National Bank of Lincolnwood v. Glenn,* 132 Ill.App.2d 322, 270 N.E.2d 493.) The recovery is limited to the reasonable amount by which the trial court finds defendant was unjustly enriched at the expense of the plaintiff. *Comm v. Goodman,* 6 Ill.App.3d 847, 855, 286 N.E.2d 758; 25 C.J.S. *Damages* § 74.

■■ As to this, the trial court had before it testimony of the persons involved and exhibits that reflected the relation between the parties. The evidence disclosed the nature, size and value of the transaction; it revealed that defendant, a real estate broker who knew the reasonable value of service by a broker, was willing to pay a commission of $100,000. In fact, the letter of August 28, 1968, showed that defendant thought Bley and plaintiff were entitled to at least $25,000 for the benefit defendant had received from their labors. The evidence, then, adequately supports the trial court's finding as to damages. Therefore, we conclude that in this action ex contractu, without amendment of the pleadings, the trial court could enter a judgment in favor of the plaintiff, quantum meruit; and that the award of $25,000 in damages for plaintiff against defendant was proper. The judgment is affirmed.

Affirmed.

HAYES, P. J., and STAMOS, J., concur.