WILLIAM ROHTER, Plaintiff-Appellant and Cross-Appellee, v. GILBERT PASSARELLA *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)   Nos. 1—91—4052, 1—92—0107 cons.

Opinion filed April 20, 1993.

Ditkowsky & Contorer, of Chicago (Kenneth K. Ditkowsky, of counsel), for appellant.

Storino, Ramello & Durkin, of Rosemont (Angelo Del Marto, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff William Rohter appeals from the trial court's grant of a motion for a "directed" finding brought by defendants Gilbert and Patricia Passarella, Dorothy Passarella, 707 Devon Corp., and Park Ridge Travel Bureau, Inc. (the travel bureau). Defendants cross-appeal from the court's earlier denial of their section 2—619 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) which had sought a determination that portions of plaintiff's claims were barred due to the expiration of the limitations period.

On December 7, 1990, plaintiff filed four separate but identical complaints alleging that defendants retained him to provide accounting services, including the preparation of State and Federal corporate and individual tax returns, and that from tax year 1980 through tax year 1986, he performed these services at the request of defendants

but received no compensation. The complaints also alleged that he had tendered a bill for past nongratuitous services rendered to defendants which they had subsequently refused to pay.

Defendants each filed a timely appearance and moved to consolidate the four separate actions. Thereafter, they brought a section 2—619 motion which asserted that all claims of plaintiff which accrued prior to December 6, 1985, were time barred under section 13—205 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 13—205.) As to the portion of plaintiff's claims which accrued after that date, *i.e.*, the services rendered for tax year 1986, defendants filed a section 2—615 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) asserting that because plaintiff was not a certified public accountant, having never passed the exam, he could not charge individuals for whom he rendered public accounting. The circuit court denied both motions without explanation.

On July 22, 1991, defendants filed an answer to the complaint, generally denying liability to plaintiff and asserting, in the alternative, the same affirmative defenses which had been the subject matter of their previous motions. However, only the travel bureau was named in the caption of the answer, and in the text of that pleading only the travel bureau made answer to the complaint. In response to plaintiff's motion for a default judgment, the four defendants who had not filed an answer sought leave to amend the travel bureau's answer by adding their names to that of the travel bureau in the caption thereof; but they made no further or other request of the court in their motion for leave to amend. The trial court denied leave to amend and also denied plaintiff's motion for a default judgment, stating that it fully appreciated the issues before it and that, therefore, the various motions relating to the pleadings were not needed.

The following evidence was adduced during a bench trial. Plaintiff, a former supervisor at the Internal Revenue Service's Chicago office and, by the time of trial, the chief auditor for the Regional Transportation Authority, testified that in 1976, in his time away from work, he carried on the accounting practice of his brother. Defendants had been clients of his brother and did not register an objection when plaintiff replaced him as their accountant. From 1977 until 1980, he performed general accounting duties for them, including the preparation of their State and Federal tax returns; and upon completion of the forms, he presented them with an annual bill for his services rendered throughout the year.

In 1980, while continuing to perform accounting **services for** defendants, plaintiff inexplicably stopped billing them for **the services**

of the prior year. This practice of performing accounting services without billing for them continued until 1987, when defendants did not seek plaintiff's assistance in the preparation of their tax returns. Upon learning that he would not be needed for tax preparation work that year, he tendered a bill to the corporate defendants for services rendered from 1980 to 1987, and he tendered a bill to the individual defendants only one month before filing the instant action in the circuit court.

On cross-examination, plaintiff admitted that he did not perform all the work on defendants' tax returns, but that some tasks were completed by two bookkeepers who periodically worked for him. He also confessed that he could not affirmatively state the precise amount of time it took him or his staff to complete the forms, and that he calculated his bill on information contained in a general time sheet kept by one of his employees reflecting the time she spent working on the returns. He conceded that he kept no records indicating the time he dealt with the defendants' accounting work and that his bill was merely a two or three times multiple of the amount he paid the bookkeepers for their efforts on defendants' tax returns.

Defendant Gilbert Passarella, the president of the corporate defendants, was called by plaintiff as an adverse witness. He testified that from 1980 through 1986, he retained the tax return preparation services of plaintiff and that he would also periodically seek his advice with regard to other accounting matters. He conceded that although he expected to pay for the services, he did not do so because no bill was ever tendered. Each year he requested a bill and plaintiff responded that he would "get around to it," but Passarella inquired no further when no bill was forthcoming.

To prove the value of his services, plaintiff entered into evidence the estimates of the IRS regarding the average amount of time a competent tax professional would need to complete the various tax forms. In addition, he called Joseph Dubow, a certified public accountant with 34 years' experience as a tax accounting practitioner who specialized in rendering accounting services for small businesses. Dubow opined that the IRS estimates constituted a reasonable approximation of the amount of time the average taxpreparer would spend completing the various tax forms. He also stated that in his opinion, the amount that plaintiff billed defendants in 1987 reflected the reasonable value of the services he had rendered them between 1980 and 1986.

At the close of plaintiff's case, defendants moved for a "directed" finding,[1] questioning only the adequacy of plaintiff's proof with regard to the value of his services. They maintained that in order to establish a *prima facie* right to recovery in *quantum meruit*, plaintiff must offer proof which is specific and detailed, and that since plaintiff offered only evidence on the reasonable value of his services, he did not bear his burden of production.

The court agreed with defendants. Because the parties offered no case law which touched on what an accountant must prove to recover in *quantum meruit*, the court found itself governed by cases which discussed the reasonableness of attorney fees. Applying that standard, it ruled that plaintiff's evidence fell well short of the type and quantity of evidence called for in the attorney fee petition cases. Accordingly, the court granted defendants' section 2—1110 motion and dismissed all four actions. Plaintiff filed a timely notice of appeal from the order dismissing his causes of action, and defendants filed a timely notice of a cross-appeal, contending that the trial court erred when it denied their section 2—619 motion, which asserted that plaintiff's claims that arose before December 6, 1985, were time barred.

## I

■ In his first assignment of error, plaintiff claims that the trial court erred by denying his motion for a default judgment because, although all five defendants entered a general appearance in this

---

[1]Since nowhere in our Code of Civil Procedure do we find a motion for a "directed" finding, we assume that what defendants actually brought was a motion pursuant to section 2—1110 of the Code of Civil Procedure, entitled "Motion in a nonjury case to find for defendant at close of plaintiff's evidence." Based on defendants' persistent mischaracterization of the motion they filed after plaintiff's presentation of evidence, it would appear that our observations concerning the motion practice in the criminal division of the circuit court of Cook County might be appropriate as well to motions brought in the municipal division. Accordingly, we provide once again our thoughts on the matter:

> "We find no provision in the Code of Criminal Procedure of 1963 or in the rules of the supreme court regarding the invocation of a 'directed finding' in cases tried without a jury. However, there appears to have arisen among both bench and bar the curious notion that a trial judge may 'direct' himself to make a 'finding' at the request of a litigant. Heaven forfend, though, that we should be iconoclastic enough to shatter a practice that has evidently enjoyed such long-continued use as to become at least a quasi-prescriptive entitlement of litigants in civil and criminal cases alike—a quaint example of the role of folklore in the development of our law." *People v. Davilla* (1992), 236 Ill. App. 3d 367, 373 n.3, 603 N.E.2d 666, 669 n.3.

action, only one defendant out of the five filed an answer to his complaint. Plaintiff overlooks, however, that concomitantly with the court's consideration of his motion for a default judgment, the four defendants who had not filed their answers moved to amend the answer of the travel bureau in the already consolidated action to include their names in the caption thereof. Although the trial judge denied the motion to amend, he stated that he recognized that all of the defendants were advancing a general denial to plaintiff's claim; consequently, in light of the fact that all defendants were represented by one attorney and that the omission had been inadvertent, the judge treated the answer of the travel bureau as the answer of all defendants. Since this was a bench trial, and the finder of fact acknowledged that he was sufficiently informed with regard to the few and simple factual issues of the case which were common to all of the defendants, we decline to hold that the court's denial of plaintiff's motion for a default judgment constitutes error.

## II

■ The critical issue in this appeal is whether the trial court erred when it granted defendants' motion for a "directed" finding. In *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43, our supreme court held that in a nonjury civil action, after the plaintiff has presented his case in chief, the defendant may move for judgment in his favor pursuant to section 64(3) of our former Civil Practice Act (now recodified at Ill. Rev. Stat. 1991, ch. 110, par. 2—1110). When ruling on the motion, the trial court is not to view the evidence in the light most favorable to the plaintiff. (But *cf. Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504 (holding that when resolving a motion for a directed verdict, the trial court is to view the evidence in its aspect most favorable to the nonmoving party).) Instead, it "must consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence." *Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 44.

On appeal, this court must let stand the trial court's resolution of the section 2—1110 motion unless we determine that its decision is against the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45, citing *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399.) Manifest weight is that quantum of evidence which makes the existence or nonexistence of a fact "clearly evident, plain and indisputable." (*Svenson v. Miller*

*Builders, Inc.* (1979), 74 Ill. App. 3d 75, 83, 392 N.E.2d 628, 634; *Haas v. Woodard* (1965), 61 Ill. App. 2d 378, 384, 209 N.E.2d 864, 367.) We have held that a finding of fact is contrary to the manifest weight of the evidence "only when an opposite conclusion is clearly evident or *** [the finding] is palpably erroneous." *Fakhoury v. Vapor Corp.* (1991), 218 Ill. App. 3d 20, 28, 578 N.E.2d 121, 127.

Here, the trial court found that plaintiff had not presented a *prima facie* case to establish his right to recover under *quantum meruit*. Specifically, the court concluded that plaintiff had offered no evidence which tended to prove precisely the time, effort and expense put forth in his performance of accounting tasks for the benefit of defendants. Given this absence of proof which the court deemed to be essential to plaintiff's cause of action, it granted defendants' motion and found in their favor. Therefore, the issue before us, properly framed, is whether under *Kokinis*, the trial court's determination that plaintiff did not establish all the elements of a *quantum meruit* action was against the manifest weight of the evidence.

■ The literal translation of *quantum meruit* is "as much as he deserves." (Black's Law Dictionary 649 (abr. 5th ed. 1983); *Nardi & Co. v. Allabastro* (1974), 20 Ill. App. 3d 323, 327, 314 N.E.2d 367, 370.) The common law adopted the term to describe a cause of action which seeks to recover the reasonable value of services which have been nongratuitously rendered, but where no contract exists to prescribe exactly how much the renderer should have been paid. (*Ekl v. Knecht* (1991), 223 Ill. App. 3d 234, 240, 585 N.E.2d 156, 162; *Van C. Argiris & Co. v. F M C Corp.* (1986), 144 Ill. App. 3d 750, 753, 494 N.E.2d 723, 725.) In the absence of an enforceable agreement, the law will find that the recipient of the services implicitly promised to compensate his provider for the benefit received. (*In re Estate of Callahan* (1991), 144 Ill. 2d 32, 40, 578 N.E.2d 985, 988, citing *Ashton v. County of Cook* (1943), 384 Ill. 287, 301, 51 N.E.2d 161.) Otherwise, absent this implied agreement, the beneficiary would be unjustly enriched by his ability to retain an unintended largess (*Callahan*, 144 Ill. 2d at 40-41, 578 N.E.2d at 988); accordingly, "the measure of recovery is the reasonable value of plaintiff's services." (*Ellis v. Photo America Corp.* (1983), 113 Ill. App. 3d 493, 500, 447 N.E.2d 852, 857.) It is perfectly apparent that the trial court did not apply this rule when it found that plaintiff offered no proof of damages, yet our review of the record discloses that it contains ample proof on the reasonable value of the benefit received by defendants.

For instance, plaintiff entered into evidence a publication of the IRS which instructs those who are engaged in the practice of **prepar-**

ing tax returns how to complete various IRS forms and schedules properly. Pursuant to the Paper Work Reduction Act of 1980 (5 U.S.C. §5313 (1988)), each instruction also includes an estimated average time required to complete the particular form or schedule. Plaintiff also offered the testimony of Joseph Dubow, who, upon being found by the court to be an expert after testifying in almost excruciating detail about the practice of tax accounting, informed the court how long it takes the average accountant to complete various forms and schedules and what would constitute a fair price for that service. He also affirmed that each of the charges for which plaintiff billed defendants represented a reasonable reflection of the value they received when the services were rendered.

The trial court did not deem sufficient this general evidence which tended to establish the reasonable value of the services at issue. Instead, it wanted specificity, such as evidence by which "a reasonable finder of fact could conclude with anything approaching what work was done, for what services rendered, on what basis of calculation." Since plaintiff offered no evidence, in the words of the trial court, on "the transactional occurrences," the court found that he did not establish a *prima facie* case of *quantum meruit*. We hold that the court erred thereby.

■■ The standard which the court applied, one which requires a minute detailing of all efforts put forth by the party seeking compensation for those efforts, is appropriate where the party is seeking the benefit of its bargain. Where one sues for breach of an express contract, he must precisely establish the damages he suffers thereby. See *Plepel v. Nied* (1982), 106 Ill. App. 3d 282, 287-88, 435 N.E.2d 1169, 1174 (holding that where an architect-plaintiff who was prevented from full performance of his contract with the defendant offers no evidence on the percentage of work completed to provide a reasonable basis to calculate damages arising from a breached oral contract, he is not entitled to the full benefit of the contract, but could nonetheless seek *quantum meruit*).

But where the party seeks not the benefit of his bargain but sues only to disgorge an unjust enrichment, the proper inquiry is the reasonable value of the benefit received. (See *Leonard Ashbach Co. v. Lear, Inc.* (1954), 3 Ill. App. 2d 254, 121 N.E.2d 343 (abstract of opinion) (finding plaintiff seeking *quantum meruit* had proven the amount of commission to which he was entitled because a jury could estimate, based on the evidence offered, the reasonable amount due); *cf. Big Farmer, Inc. v. Agridata Resources, Inc.* (1991), 221 Ill. App. 3d 244, 581 N.E.2d 783 (affirming trial court's denial of the plaintiff's motion

to amend complaint to add a *quantum meruit* count, because, although the plaintiff offered detailed evidence on the actual work done for the defendant, it declined to offer any evidence on the reasonable value of the benefit to the defendant).)

> "If no contract exists and services are rendered, liability arises only when the results and the benefits of services are accepted by the other party in which case liability arises out of such acceptance of the fruits of the other's labor. In all such cases liability is measured, not by the amount of time and energy expended by the laboring party but by the value of such services to the beneficiary." *In re Irving-Austin Building Corp.* (7th Cir. 1938), 100 F.2d 574, 578.

■ Here, because the trial court did not view the evidence before it through the proper optic, it was unable to appreciate the authority commanded by the evidence plaintiff offered on the issue of the reasonable value of the benefit to defendants. Of course, while presenting their case, defendants are free to offer evidence which denies, rebuts, controverts or otherwise explains plaintiff's proof on the reasonable value of the services rendered. But since the record before the circuit court in the case at bar did not contain any such evidence, it erred by giving no respect to plaintiff's proof. Consequently, its "directed" finding, which is wholly unsupported by the record, must be reversed.

### III

The final issue stems from defendants' cross-appeal of the trial court's denial of their section 2—619 motion "for involuntary dismissal" of plaintiff's complaint. They assert that plaintiff's right to seek compensation for preparing tax returns accrued as soon as he completed the forms for that year. According to defendants, since plaintiff filed this action on December 6, 1990, he may seek recovery only for those services provided after December 6, 1985, as any right to *quantum meruit* he may have had for services he rendered prior to that date would be time barred by section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—205). In response, plaintiff maintains that, given the nature of the practice of accounting and the almost symbiotic relationship an accountant must have with his clients, his right to recover was actionable only after he presented defendants with a statement for his services and they denied owing him any amount.

■ Both parties agree, as they must, that the five-year limitation period of section 13—205 applies to *quantum meruit* actions. (*Brown*

*v. Forest Park Foundation* (1974), 17 Ill. App. 3d 718, 308 N.E.2d 310; see also *P-K Tool & Manufacturing Co. v. General Electric Co.* (N.D. Ill. 1985), 612 F. Supp. 276.) The only real question, then, becomes one of when the period began to run with regard to plaintiff's claims: upon presentment and subsequent rejection of a bill for services, or as soon as the services were rendered. The general principle is that a "statute of limitation begins to run when the party to be barred has the right to invoke the aid of the court and to enforce his remedy." (*Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 532, 580 N.E.2d 1198, 1201, *appeal denied* (1991), 143 Ill. 2d 635, 587 N.E.2d 1011.) Pursuant to that rule, plaintiff clearly could have billed defendants as soon as he rendered his services to them. Plaintiff obviously appreciated that he was entitled to bill defendants annually because for the tax years of 1976 though 1980 he did precisely that. Once he had billed defendants, plaintiff could have sought the assistance of the courts in recovering the debt owed. See *Partipilo v. Hallman* (1987), 156 Ill. App. 3d 806, 510 N.E.2d 8 (finding that a homeowner who erroneously paid the property taxes of another property owner was time barred to recover the unjust enrichment because his right to seek disgorgement accrued each year beginning when he erroneously paid the taxes).

▮ We deem plaintiff's contention that the interdependent relationship of an accountant with his client is such that no clear point of demarcation exists to mark where one year of services ends and the next begins to be belied by his past billing practices and, more important, inapposite to well-established law. From 1976 until 1980, plaintiff was able to find an appropriate break in the year where he could bill defendants for the services he provided. Each year that respite coincided with his completion of their tax returns. For some unexplained reason, it was only after the 1980 tax year that he found it impossible to determine when it was appropriate to seek remuneration for services rendered. We find that the practice of the parties from 1976 through 1980 evinced an understanding shared by all that plaintiff was entitled to be paid annually upon completion of his tax services for each tax year. Furthermore, nothing in the record indicates that plaintiff acted in such a way after that date which would inform defendants that the old rule had changed and that he would now bill them only when their relationship ended. See *Ennis v. Pullman Palace Car Co.* (1896), 165 Ill. 161, 46 N.E. 439 (holding that where, based on three years of past practice, the parties understood that plaintiff was to be employed and compensated on a month-to-month basis, his right to sue, for the purposes of the statute of limita-

tions, accrued each month, and each unpaid month constituted a separate cause of action).

Accordingly, here, based on his own prior conduct, plaintiff's right to be compensated accrued each year, and thus under the general rule, the statute of limitations with regard to judicial enforcement of his right of compensation began to run at the close of that year.

Finally, our supreme court has held:

> "In respect to the Statute of Limitations *** [if] no time was fixed as to when such labor and services were to be paid for, the law would presume that they were to be paid for at the end of the year ***." (*Schmidt v. Pfau* (1885), 114 Ill. 494, 503, 2 N.E. 522, 527.)

(See also *Ennis*, 165 Ill. at 173, 46 N.E. at 442 ("Ordinarily, when a man is employed under a general agreement which fixes no term of service, and continues in service a long time, the hiring will be treated as a hiring by the year").) Plaintiff offers nothing which would rebut the long-standing presumption that he was employed on a year-to-year basis and that his cause of action to recover the value of services accrued at the close of each year. Any services which plaintiff rendered prior to December 6, 1985, are therefore outside the limitations period and are time barred. Consequently, the court erred when it denied defendants' section 2—619 motion which asserted the statute of limitations as a defense to part of plaintiff's claim and must be reversed.

In summary, on remand, after conducting the remainder of the trial which ordinarily would have been conducted after plaintiff's case, the trial court is to make a determination of the reasonable value of the services rendered by plaintiff to defendants after December 6, 1985.

Reversed and remanded for further proceedings consistent with the views expressed in this opinion.

McCORMICK, P.J., and DiVITO, J., concur.