Jerry E. GREGG, Plaintiff,

v.

SR INVESTORS, LTD.,
et al., Defendants.

No. 96 C 7493.

United States District Court,
N.D. Illinois,
Eastern Division.

June 17, 1997.

Thomas E. Gibbs, Chicago, IL, for Plaintiff.

David H. Sachs, William J. Serritella, Jr., Marc William O'Brien, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for S.R. Investors, Ltd., a/k/a SR Investors L.P., d/b/a Sierra Railroad Co., Silver Foot, Inc., James L. Foster, CHGO Med. Equip. Co.

Douglas M. Hagerman, Foley & Lardner, Milwaukee, WI, for John Barone, Russell J. Barron.

David H. Sachs, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for Frank Carsello, Richard Cohn, Gene Croci, Mary Croci, June Dezelan–Kingsley, Gary Hagstrom, Alex Lachman, George Lynch, Mary Jo Lynch, Stanley Rosow, Anthony M. Sanfilippo, John Sanfilippo, James T. Schwalenberg, John Shaw, John G. Taylor, Charles C. Thom, U.S. Dental Institute, Inc., James Voss, Bonnie Voss, Robert M. Ward.

A. Dennis Yankus, Libertyville, IL, pro se.

John H. Anderson, Alvin L. Kruse, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Alfred Zelent, Evelyn Zelent, MFC Properties.

## *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Jerry Gregg has filed a five count complaint against: SR Investors, Ltd., d/b/a Sierra Railroad, a/k/a SR Investors, L.P. ("SRI"); twenty-four individuals or entities who are limited partners of SRI, including MFC Properties ("MFC") and Richard Cohn ("Cohn"); Silver Foot, Inc. ("Silver"); James Foster; Sierra Pacific Coast Railway, Inc. ("Sierra Pacific"); and Chicago Medical Equipment Company ("CMEC"). Count I alleges a breach of a consulting agreement against SRI, Silver, and the SRI partners. Count II is a claim for *quantum meruit* against the same defendants. Count III alleges a violation of the Illinois Uniform Fraudulent Transfer Act against Silver, Foster and Sierra Pacific. Count IV is brought against Sierra Pacific alleging liability based on a "De Facto" merger. Count V seeks to pierce the corporate veil against Foster and CMEC.

MFC and Cohn have moved to dismiss Counts I and II as to them for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). SRI and Silver have moved to dismiss Count II. Foster has moved to dismiss Count III. For the reasons set forth below, MFC and Cohn's motions are denied, SRI and Silver's motion is granted in part, and Foster's motion is granted.

### *FACTS*

Plaintiff is an individual residing in Kansas engaged in business as a railroad consultant. SRI was formed in 1983 as an Illinois limited partnership under the Illinois Uniform Limited Partnership Act to own and operate the Sierra Railroad ("Sierra"). Silver is a Delaware corporation and a general partner of SRI. Foster is president of Silver and CMEC, which is the sole shareholder of Silver.

Plaintiff alleges that in July through August 1986 he negotiated with Foster as president of Silver on behalf of SRI, and then entered into a consulting agreement (the "Consulting Agreement") with SRI pursuant to which plaintiff was to provide certain consulting services to Sierra. According to the complaint, the terms of the Consulting Agreement are expressed in a series of letters between plaintiff and SRI's attorneys and accountants. Pursuant to that agreement, plaintiff alleges that he was appointed Sierra's executive vice president and chief operating officer with full authority to hire and fire and to make all executive decisions concerning Sierra's day-to-day operations. The Consulting Agreement contained a detailed plan pursuant to which plaintiff was to be compensated for his services. According to plaintiff, the Consulting Agreement terminated only upon his death, or upon SRI's exercising a buy-out option. Plaintiff alleges that he performed under the contract from August 6, 1986, until January 1, 1995, at which time SRI transferred all of its interest in Sierra to Silver, which then transferred it to Sierra Pacific, a California corporation.

Plaintiff alleges that he was not paid for his services from January 1, 1987, until January 1, 1995.

## DISCUSSION

### I. MFC's and Cohn's Motion to Dismiss

■ MFC and Cohn both invested in SRI as limited partners. Plaintiff has alleged that neither the Illinois Uniform Limited Partnership Act ("ULPA") nor the later Revised Uniform Limited Partnership Act ("RULPA") allows Illinois limited partnerships to operate a railroad. Specifically, the RULPA (805 ILCS 210/105) provides:

> Nature of Business—a limited partnership may carry on any business that a partnership without limited partners may carry on except ..., the operation of railroads....

Plaintiff further alleges that SRI, which was formed under the ULPA (which also did not allow a limited partnership to operate a railroad) failed to file a certificate to be governed by the RULPA as required by Section 1205(d) of that Act. Plaintiff argues that because SRI could not properly be formed as a limited partnership, all the "limited partners," including MFC and Cohn, must be construed to be general partners. As general partners, plaintiff alleges they are liable for all debts of the partnership.

MFC's and Cohn's responses are twofold. First, they argue that they cannot be deemed general partners simply because SRI operated a railroad. In particular, they argue that the restriction contained in § 105 does not apply to SRI because the railroad SRI operated was located in California, and California's Uniform Limited Partnership Act contains no such restriction. Cal. Corp.Code Section 15616. The court does not agree.

■ The Illinois Act unambiguously provides that no Illinois limited partnership may carry on the operation of a railroad. It is not restricted to railroads located in Illinois, and the court will not read such a restriction into the Act. Therefore, SRI, which had a stated purpose to operate the railroad, was not a validly formed Illinois limited partnership. As Judge Aspen has noted, a corollary to the failure to valid formation as a limited part-

nership is that all partners will be treated as general partners. *Continental Waste System, Inc. v. Zoso Partners,* 727 F.Supp. 1143 (N.D.Ill.1989). Although *Continental Waste* involved technical failures to timely comply with the Act's filing requirements, the result was an invalidly formed limited partnership. The same principle should apply in the instant case.

■ Next, MFC and Cohn argue that they cannot be held accountable as general partners because they timely withdrew from the partnership pursuant to § 304 of the RULPA, which provides:

> "Person Erroneously Believing Himself or Herself Limited Partner.
>
> (a) [A] person who makes a contribution to a business enterprise and erroneously but in good faith believes that he or she has become a limited partner in the enterprise is not a general partner in the enterprise and is not bound by its obligations by reason of making the contribution, receiving distributions from the enterprise, or exercising any rights of a limited partner, if, within a reasonable time after ascertaining the mistake, he or she: ... (ii) withdraws from future equity participation in the enterprise, such withdrawal to be evidenced by his or her executing and filing in the office of the Secretary of State a certificate declaring withdrawal under this section."

Both defendants have submitted their certificates of withdrawal as part of their motion to dismiss. On a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), however, the court's review is limited to the allegations contained in the complaint. Plaintiff's certificates are matters outside the complaint and are more appropriately presented in a motion for summary judgment under Fed.R.Civ.P. 56, after plaintiff has had an opportunity to conduct discovery. Accordingly, MFC's and Cohn's motions to dismiss are denied.

### II. SRI's and Silver's Motions to Dismiss

■ In Count II plaintiff asserts a claim for *quantum meruit.* It is brought in the

alternative to his claim for breach of contract. Defendants SRI and Silver have moved to dismiss Count II, alleging that the claim is barred by the appropriate statute of limitations.

■ All parties agree that plaintiff's claim is subject to the five year limitations period set forth in 735 ILCS 5/13–205. The issue in the case is at what point in time plaintiff's claim accrued. Generally, a claim accrues when a party has a right to invoke the aid of the court to enforce its remedy. *Berg & Associates, Inc. v. Nelsen Steel & Wire Co.*, 221 Ill.App.3d 526, 162 Ill.Dec. 779, 580 N.E.2d 1198 (1st Dist.1991). Defendants argue that for purposes of the statute of limitations, when services are allegedly performed and no time period has been specified for payment, the law presumes that the services were to be paid for at the end of the year in which they were rendered. *Schmidt v. Pfau*, 114 Ill. 494, 2 N.E. 522 (1885); *Rohter v. Passarella*, 246 Ill.App.3d 860, 870, 186 Ill. Dec. 807, 617 N.E.2d 46 (1st Dist.1993). Thus, defendants argue that any claim for services rendered by plaintiff prior to January 1, 1991, (i.e., for the years 1986 through 1990) is barred by the statute of limitations, plaintiff having filed his complaint in November 1996.

In response, plaintiff asserts that "a cause of action on an oral contract or a *quantum meruit* theory accrues when the services are completed." *P–K Tool & Mfg. Co. v. General Elec. Co.*, 612 F.Supp. 276 (N.D.Ill.1985). Plaintiff alleges that he performed services continuously, without interruption, from the date of his appointment through the transfer of the railroad in January 1995. Thus, plaintiff asserts that his cause of action did not accrue until January 1995, when payment became due.

The court rejects this argument for two reasons. First, in *P–K Tool*, the court held that the plaintiff's claim for *quantum meruit* was barred by the statute of limitations. The plaintiff had performed services in 1977 and 1978. The complaint was filed in 1985. The plaintiff argued that the services were part of the continuous contract. The court rejected the continuous contract argument, holding both that the services were complet-

ed in the years rendered, and also that because the plaintiff performed pursuant to an existing contract, *quantum meruit* relief was unavailable. *Id.* at 278. Thus, P–K Tool lends no support to plaintiff. Nor can plaintiff rely on *Schmidt v. Desser*, 81 Ill.App.3d 940, 37 Ill.Dec. 206, 401 N.E.2d 1299 (1st Dist.1980), because, as defendant points out, it did not involve a claim for services rendered over a period of years. Under Illinois law, plaintiff could have sued at the end of each year to collect the reasonable value of his services rendered during that year. *Pfau*, 114 Ill. 494, 2 N.E. 522.

Second, the letters attached to plaintiff's complaint indicate that he was to be paid based on the railroad's yearly profit, thus indicating yearly payment. Plaintiff argues that defendant failed to perform the necessary accounting, leaving plaintiff unable to determine the amount due him in any one year. This argument illustrates a misunderstanding as to the *quantum meruit* claim, which is for the reasonable values of services rendered where no contract exists. *Rohter*, 246 Ill.App.3d at 866, 186 Ill.Dec. 807, 617 N.E.2d 46. Thus, while plaintiff may not have been able to determine the amount due under the alleged contract, he could have demonstrated the reasonable value of his services at any time, without the accounting necessary under the contract. Accordingly, the court concludes that plaintiff's claim is barred by the statute of limitations. Thus, Count II is dismissed for any claim for services rendered prior to January 1, 1991.

### III. Foster's Motion to Dismiss

■ In Count III, plaintiff has alleged a violation of the Illinois Fraudulent Transfer Act ("FTA"), 740 ILCS 160/1, *et seq.* against Silver, Foster, and Sierra Pacific. Specifically, plaintiff alleges that Foster, as president of Silver, caused SRI to transfer Sierra to Silver. Silver then transferred Sierra to Sierra Pacific, which assumed certain liabilities of Silver in an amount not to exceed $275,-000.00, and gave Silver a promissory note for $250,000.00 at 7% interest, and 375,000 shares of Sierra Pacific preferred stock. As part of the transfer, plaintiff alleges that Sierra Pacific assumed an obligation to ob-

tain a release of Foster's personal guarantee of a loan made by Mid City Bank to Silver. Plaintiff alleges that Silver was either insolvent before the transfer to Sierra Pacific or became insolvent as a result of the transfer. Accordingly, plaintiff alleges that transfer violated the FTA.

Section 6(a) of the FTA, 740 ILCS 160/6(a) provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonable equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The FTA defines transfer as meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes the payment of money, release, lease, and creation of a lien or other encumbrance." 740 ILCS 160/2(1).

Plaintiff's claim against Foster is based on the allegation that as part of the transfer to Sierra Pacific, Sierra Pacific agreed to assume the obligation to obtain a release by Mid City Bank of Foster's personal guarantee. Plaintiff argues that this constitutes an indirect transfer of Silver's assets to Foster through Sierra Pacific.

The court disagrees. While plaintiff is certainly correct that an asset can be transferred indirectly, Foster's personal guarantee did not constitute an "asset" of the debtor as defined by the FDA. Under the Act, asset means "property of a debtor." 740 ILCS 160/2(b). Foster's personal guarantee was never property of Silver or SRI. The personal guarantee was an asset of Mid City Bank, which had the only right to enforce or release it. Because it was not property of the debtor, the release of the personal guarantee is not a transfer of the debtor's asset under 160/2(1). Accordingly, Foster's motion to dismiss Count III as to him is granted.

## CONCLUSION

For the reasons set forth above, defendant MFC Properties' and Cohn's motions to dismiss are denied. SRI's and Silver Foot, Inc.'s motion to dismiss Count II is granted in part, and Foster's motion to dismiss Count III is granted.