BRADLEY REAL ESTATE TRUST, Plaintiff-Appellee and Counterdefendant-Appellee, v. DOLAN ASSOCIATES LIMITED *et al.*, Defendants-Appellants (Ticor Title Insurance Company of California, Defendant and Counterdefendant; Norwood Plaza Venture, Counterplaintiff and Third-Party Plaintiff-Appellant; E. Lawrence Miller, Third-Party Defendant-Appellee; R. Daniel Claud, Third-Party Defendant).

First District (6th Division)   No. 1—92—0758

Opinion filed August 26, 1994.

Connelly, Mustes & Schroeder, of Chicago (Michael P. Connelly, of counsel), for appellants.

Michael B. Nash and Thomas R. Nash, both of Chicago, for appellees.

JUSTICE GIANNIS delivered the opinion of the court:

Bradley Real Estate Trust (Bradley) filed this action seeking a declaration that it was entitled to receive funds held in escrow by Ticor Title Insurance Company of California (Ticor). Norwood Plaza Venture (Norwood) filed a counterclaim and later an amended counterclaim and third-party complaint against Bradley, its president E. Lawrence Miller and R. Daniel Claud, a real estate broker acting as an agent for Bradley. Norwood alleged interference with prospective business advantage, promissory fraud, *quantum meruit* and breach of contract. The court dismissed Norwood's interference with prospective business advantage and *quantum meruit* claims and R. Daniel Claud was subsequently dismissed as a third-party defendant prior to trial. Following a bench trial on the remaining breach of contract and promissory fraud issues, the court entered judgment in favor of Bradley and Miller and against Norwood. In addition, the court ordered Ticor to release the escrow funds to Bradley. Norwood brings this appeal.

Bradley was a Massachusetts business trust and the owner of the Champlain Building located in Chicago. Strobeck Reis & Company (Strobeck) was a real estate brokerage firm which employed Claud. Miller hoped Bradley would be able to sell the Champlain Building and simultaneously purchase other Chicagoland real estate. Structuring the sale of the Champlain Building in this way would allow

Bradley to avoid incurring tax liability and would also prevent a partial liquidation of Bradley. Strobeck and Claud assisted Miller in finding property suitable for Bradley to buy. Strobeck also considered purchasing the Champlain Building from Bradley.

Norwood owned the Norwood Plaza Shopping Center (Norwood Plaza). Harry Dolan was the president of Dolan Associates Limited and the general partner of Norwood. Claud contacted Dolan regarding Bradley's interest in purchasing Norwood Plaza. After initial discussions and on April 15, 1986, Claud, as agent for Bradley, wrote to Dolan and proposed to buy Norwood Plaza in a letter of intent. The letter proposed that a formal sales agreement for Norwood Plaza be signed within 60 days. Dolan accepted Claud's proposal by signing the letter on April 22, 1986. Subsequently, on May 23, 1986, Claud again wrote Dolan and indicated that the trustees of Bradley had authorized him to place $100,000 into escrow for the purchase of Norwood Plaza provided certain additional conditions were met, including the approval of the transaction by Bradley's trustees. $100,000 was ultimately placed into an escrow account at Ticor.

Claud's letter of intent proposed that Bradley would buy Norwood Plaza for $9,826,400, less the assumption of certain industrial revenue bonds which then had an outstanding balance of $6,825,000. Almost immediately after the letter was signed by Dolan, however, bond counsel informed the parties that if the letter were a binding contract for the sale of Norwood Plaza, the bonds would accelerate. A provision in the letter of intent stated that Bradley's proposal was contingent on verification that the bonds would not accelerate.

The parties attempted to restructure the deal in an attempt to get around the Norwood Plaza bond problem and Bradley continued to negotiate with Strobeck regarding the sale of the Champlain Building. Norwood was aware of the significance of the Champlain sale to Bradley and had specifically "acknowledged" in the letter of intent that the sale of Norwood Plaza was being structured as part of a three-way exchange.

In December 1986, Claud was still looking for financing for the Champlain Building and Federal tax changes regarding Norwood Plaza's industrial revenue bonds were about to make the three-way deal impossible if not closed before December 31. Although Claud attempted to persuade Bradley to finance the purchase of the Champlain Building itself and continued to express optimism, negotiations ended near year end. Norwood was informed that Bradley was no longer interested in Norwood Plaza. This litigation resulted.

The trial court found that there was no binding contract for the

sale of Norwood Plaza between Norwood and Bradley. Norwood argues that this was error in light of the letter dated April 15, 1986. Even though the letter called for the execution of a subsequent "formal Sale Agreement," Bradley and Miller concede that the letter could be an enforceable contract if the parties had intended such an effect. *Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 156 N.E.2d 513; *Cinman v. Reliance Federal Savings & Loan Association* (1987), 155 Ill. App. 3d 417, 508 N.E.2d 239.

■ The question of whether an enforceable contract exists is dependent upon the intent of the parties, as evidenced by the language of the document. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) The determination of this issue may be a question of law or a question of fact. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 365 N.E.2d 1028.) If the terms of the alleged contract are unambiguous, then the intent of the parties must be ascertained solely from the words used and is a question of law. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178; *Interway*, 85 Ill. App. 3d at 1098.) If the language is ambiguous, extrinsic evidence is admissible to determine the parties' intent and the interpretation of the language is a question of fact. (*Pre-Fab Transit Co. v. Northbrook Property & Casualty Insurance Co.* (1992), 235 Ill. App. 3d 103, 106, 600 N.E.2d 866; *Chicago Principals Association v. Board of Education* (1980), 84 Ill. App. 3d 1095, 406 N.E.2d 82.) Where ambiguity exists, the trial court's determination of the intent of the parties must not be disturbed on review unless it is contrary to the manifest weight of the evidence. See *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 128-29, 481 N.E.2d 712.

●2 Regardless of how the letter of intent is construed, however, we do not believe an enforceable contract for the sale of Norwood Plaza exists under these facts. Section 2 of the Frauds Act, also known as the statute of frauds, states in pertinent part:

> "No action shall be brought to charge any person upon a contract for the sale of lands *** unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully *authorized in writing*, signed by such party." (Emphasis added.) (740 ILCS 80/2 (West 1992).)

The Frauds Act thus requires that an agent who signs a conveyance of real estate be authorized in writing to do so in order to render the conveyance enforceable as a contract. (*Lipkin v. Koren* (1946), 392 Ill. 400, 64 N.E.2d 890; *Prodromos v. Poulos* (1990), 202 Ill. App. 3d 1024, 560 N.E.2d 942; *Cosmopolitan National Bank v. Kobialka* (1980), 85

Ill. App. 3d 1, 3, 406 N.E.2d 150.) Bradley and Miller timely raised the Frauds Act both in the trial court and again in this appeal.

■ At no time before Claud signed the letter as "agent" had Bradley authorized Claud in writing to execute a letter agreement. The parties instead intended Bradley to ratify the agreement afterwards and so stated in their letter: "Seller and Buyer acknowledge that the Buyer's president, Mr. Larry Miller, has approved this offer, but that approval by the Trustees of the Bradley Real Estate Trust is required for this offer to be binding." (See *Prodromos*, 202 Ill. App. 3d at 1029 (principal may ratify agent's action after the fact by acceding to it in writing).) While Bradley did eventually ratify the terms of the letter, it did so with the express reservation that the sale be done in the context of a multiparty exchange involving the Champlain Building. Thus, Norwood's attempts to argue that the letter constituted a binding agreement is barred by the Frauds Act because Claud's authority to bind Bradley was limited to a transaction involving the completion of the Champlain sale.

Norwood claims that Bradley and Miller should be equitably estopped from raising a statute of frauds defense. Equitable estoppel is a recognized exception to the statute of frauds. (See *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1986), 114 Ill. 2d 133, 148, 500 N.E.2d 1.) This exception, however, requires a showing that the party raising the statute of frauds defense cannot do so in good conscience and in conformity with the duty of honest dealing. (*Ceres*, 114 Ill. 2d at 148; *Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 763, 455 N.E.2d 246.) As we discuss more fully below, the facts of this case do not support an equitable estoppel claim.

■ Norwood alleged that Bradley committed fraud by indicating to it that the sale of the Champlain Building was not a condition of its purchase of Norwood Plaza. To successfully bring a claim based upon fraud, a plaintiff must allege and prove the following elements: (1) defendant made a statement; (2) of a material nature; (3) which was untrue; and (4) was known by defendant to be untrue, or was made in culpable ignorance of its truth or falsity; (5) was made for the purpose of inducing reliance by the plaintiff; (6) was actually relied on by the plaintiff; and (7) resulted in plaintiff's injury. *Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1, 9, 584 N.E.2d 948.

■ In Illinois, a statement of future intention cannot generally be the basis of a claim of fraud because alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct. (See *HPI Health Care Services, Inc. v. Mt.*

*Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 168, 545 N.E.2d 672; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634.) An exception to the prohibition of "promissory fraud" exists, however, where the misrepresentations can be said to be part of a "scheme to defraud." *Steinberg,* 69 Ill. 2d at 334; *Pepper v. Marks* (1988), 168 Ill. App. 3d 253, 522 N.E.2d 688.

■ Norwood claims that Bradley did have a scheme to defraud it of the opportunity to sell Norwood Plaza during the 1986 tax year. Norwood showed at trial that the industrial revenue bonds made the purchase of Norwood Plaza attractive to buyers before a tax-related deadline of December 31, 1986, but not thereafter. Norwood claimed that Miller and Bradley hoped to "tie up" Norwood Plaza while they negotiated to sell the Champlain Building by intentionally leading Dolan to believe that the purchase of Norwood Plaza was not contingent on the sale of the Champlain. Norwood alleged that it did not sell Norwood Plaza during 1986 to other prospective buyers in reliance on Miller and Bradley's representations that the sale of the Champlain was not a condition of closing. Norwood claimed that its failure to sell Norwood Plaza in 1986 resulted in approximately $2 million in damages due to the loss of "exceptional buyer interest" that predominated the commercial real estate market just prior to the 1987 tax law changes.

In support of its promissory fraud claim, Norwood relies upon a summary judgment case, *Stamatakis Industries, Inc. v. King* (1987), 165 Ill. App. 3d 879, 520 N.E.2d 770. In *Stamatakis,* however, the appellate court merely concluded that the plaintiff had alleged sufficient facts to create a question for trial. Unlike the trial court in *Stamatakis,* the trial court in this case allowed Bradley the opportunity at trial to prove promissory fraud, but found the ultimate facts insufficient to rule in Norwood's favor. The trial court stated in its ruling that it was "especially impressed" with the testimony of George Covington, Bradley's counsel. Covington's testimony indicated that Norwood was aware of Bradley's intentions:

> "First of all, it was always contemplated at our end that we would not enter into the contract to begin with unless there was—we reach a comfort level with respect to the Champlain deal. They always knew at their end because the Champlain building provision was in the contract, although not as a post-contract signing contingency, that we were—that was part of the overall transaction. And there was nothing that we ever did to make them be of the impression that was not an important consideration in our mind, and certainly always was in our mind."

A reviewing court will defer to the trial court's findings unless

they are against the manifest weight of the evidence. (*Dooley v. James A. Dooley Associates Employees Retirement Plan* (1982), 92 Ill. 2d 476, 489, 442 N.E.2d 222.) The fact that Miller and Claud knew Dolan had offers from other prospective purchasers and that Dolan had discontinued negotiating with others does not necessarily lead to the conclusion that Bradley or Miller intentionally misled Dolan regarding the importance of the Champlain sale. Because the trial court's factual finding regarding the existence of promissory fraud is not against the manifest weight of the evidence, we reject Norwood's promissory fraud claim and affirm the decision of the trial court.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.