**INDUSTRIAL SPECIALTY CHEMICALS, INC., an Illinois corporation, Plaintiff,**

v.

**CUMMINS ENGINE CO., INC. an Indiana Corporation; Fleetguard, Inc., an Indiana Corporation, Doug Hudgens and Jerry Joyner, Defendants.**

No. 94 C 5378.

United States District Court,
N.D. Illinois,
Eastern Division.

June 29, 1995.

Lisa L. Harris, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Joseph J. De-Michael, Joseph E. Daudish, James T. Ashack, Elmore & DeMichael, Oak Forest, IL, for plaintiff.

Kevin Michael Flynn, Theodore E. Harman, Phillip M. Goldberg, Coffield, Ungaretti and Harris, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Industrial Specialty Chemicals, Inc. ("ISC") brings this six-count complaint against defendants Cummins Engine Company, Fleetguard Inc., Doug Hudgens and Jerry Joyner. Defendants have moved to strike the complaint for failure to comply with the requirements of Fed.R.Civ.P. 8. In addition, defendants have also moved to dismiss Counts I, II, IV, V and VI, arguing that plaintiff has failed to state claims in these counts upon which relief can be granted. For the reasons set forth below, defendants' motions are granted in part and denied in part.

### I. Background

ISC, an Illinois corporation, manufactures and distributes chemicals that are specially produced for large industrial concerns. ISC

hoped to gain as two of its customers Cummins, a producer of diesel engines, and Fleetguard, a subsidiary of Cummins that distributed chemicals and maintenance products for diesel engines. Beginning in 1985,[1] plaintiff began discussing with Doug Hudgens of Fleetguard about the possibility of improving certain chemicals Fleetguard was currently using, as well as inventing new chemical solutions. In particular, plaintiff alleges that Fleetguard asked it to develop various chemicals for use in Cummins diesel engines. At Hudgens's request, ISC sent several brochures and letters outlining ISC's products and services, as well as test samples of its products, to Cummins and Fleetguard. In addition, the parties spoke several times in person and over the phone about Fleetguard's needs, ISC's progress on developing certain chemicals, and the test results obtained from various samples. ISC alleges that before the parties began exchanging privileged and confidential information, they executed confidentiality agreements covering all the materials sent by ISC to Fleetguard and Cummins. Complaint ¶¶ 6(AA), 6(MMM).

ISC claims that by 1987 it had expended thousands of hours in developing chemical products and adapting them to Fleetguard's specifications. In response to ISC's request for some consideration, Hudgens allegedly responded that if ISC successfully developed a new acid cleanser that met Fleetguard's and Cummins's performance criteria, both companies would aggressively market the product and purchase as much as they needed from ISC for an indefinite period of time. In addition, Hudgens allegedly promised that ISC would be "a major second source supplier" of several other chemicals for both Fleetguard and Cummins if its efforts on the acid cleanser were successful. Complaint ¶ 6(O). These promises are alleged to have been reiterated by Hudgens and other members of Fleetguard at various times between 1987–90, including a representation by Hudgens that Fleetguard would purchase at least $200,000 of supplies from ISC annually beginning in 1990. Complaint ¶¶ 6(U), 6(DD), 6(FF), 6(NN), 6(SS), 6(DDDD). ISC contends that in reliance on these promises, it continued expending substantial time and effort on developing the desired acid cleaner and various other chemical products sought by Fleetguard and Cummins. In addition, when development of the acid cleanser was complete, ISC developed packaging and brochure materials for the marketing and distribution of the chemical by Cummins and Fleetguard. ISC's efforts began to bear fruit in August 1990, when Fleetguard ordered 2400 gallons of a chemical solution ISC had developed specifically for its use. Complaint ¶ 6(UUU).

Notwithstanding its efforts on behalf of Cummins and Fleetguard, plaintiff alleges that beginning in June 1991 defendants began a concerted effort to terminate their relationship with ISC and renege on their prior commitments. ISC alleges that during telephone conversations in July and August 1991, Hudgens expressed dissatisfaction with plaintiff's services, stated that he and others at Fleetguard had reservations about the company's abilities, and questioned the ethics and competence of ISC's principals. Although a Fleetguard representative called ISC on December 6, 1991 and requested technical information on ISC's products (purportedly in order to place another order), no furthers orders were placed by either Fleetguard or Cummins, and no further contact with ISC was initiated.

On September 1, 1994, ISC filed this sixty page complaint against the several defendants, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the confidentiality agreements, violations of the Illinois Consumer Fraud and Deceptive Practices Act and the Illinois Deceptive Trade Practices Act, and common law fraud and equitable estoppel.

---

**1.** Apparently, plaintiff and defendants had been involved in a long (and somewhat complicated) business relationship for several years prior to 1985. Indeed, ISC's complaint details events going back to 1974, involving ISC's principles, the defendants and various other competitors. We need not discuss the details of this relationship, however, as these complexities do not appear relevant to the instant motions.

## II. Motion to Dismiss Under Rule 12(b)(6)

 Defendants have moved to dismiss five of the six counts. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Division of the Regional Transp. Auth.*, 52 F.3d 623, 627 (7th Cir.1995). At this stage in the litigation we take as true all factual allegations made in the complaint, and construe all reasonable inferences therefrom in plaintiff's favor. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995).

### A. Count I (Breach of Contract)

Defendants first contend that Count I is deficient because the alleged contract between ISC, Fleetguard and Cummins is too indefinite to be enforceable, and it fails to set forth such key elements as price, quantity and duration. Plaintiff responds that defendants made specific oral representations of an intention to purchase their products, and any missing terms can be supplied through the course of dealings between the parties and the voluminous documents attached to the complaint as exhibits.

██ Under Illinois law,[2] the intention of the parties determines whether a contract has been formed. *Bradley Real Estate v. Dolan Assocs., Ltd.*, 266 Ill.App.3d 709, 203 Ill.Dec. 582, 584, 640 N.E.2d 9, 11 (1994); *Bercoon, Weiner, Glick & Brook v. Manufacturers Hanover Trust Co.*, 818 F.Supp. 1152, 1155 (N.D.Ill.1993). "Although the intent of the parties to an oral contract is generally a question of fact, it may become a question of

law if the facts are undisputed and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency, Inc.*, 897 F.2d 288, 292 (7th Cir.1990) (quotations and citation omitted). ISC argues that on several occasions Hudgens and other members of Fleetguard represented to ISC that if it produced certain chemical products according to defendants' specifications and needs, then defendants would purchase these chemicals from ISC. These allegations, if believed, could support a finding that defendants intended to be bound by their promise to purchase future orders from ISC.

 However, as defendants correctly point out, many elements of this alleged agreement are not mentioned in the complaint. In particular, there is no allegation that the parties agreed on (1) the prices of the products to be sold, (2) the duration of the agreement, or (3) the amount of each type of chemical to be sold. The first deficiency will not defeat plaintiff's contract claim, as a reasonable price term may be implied to a contract.[3] 810 ILCS 5/2–305(1); *Ingrassia v. Ingrassia*, 156 Ill.App.3d 483, 109 Ill.Dec. 68, 76, 509 N.E.2d 729, 737 *app. denied*, 116 Ill.2d 555, 113 Ill.Dec. 299, 515 N.E.2d 108 (1987); *Ryan v. Wersi Elecs. GmbH and Co.*, 3 F.3d 174, 180 (7th Cir. 1993). So too with the second objection, since "[o]rdinarily, where no definite term is fixed during which an executory contract shall continue in force, it is terminable at the will of either party." *First Nat. Bank of Cicero v. Sylvester*, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 27, 554 N.E.2d 1063, 1069, *app. denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990); *Rush–Presbyterian–St. Luke's Medical Center v. Hellenic Republic*, 980 F.2d 449, 452 (7th Cir.1992).[4] The third

2. The parties do not appear to dispute that Illinois law provides the rule of decision in this diversity case.

3. The parties provide only a cursory discussion on the applicability of the Uniform Commercial Code to the alleged contract. However, the "predominate purpose" of the agreement was for the sale of chemicals (rather than ISC's services), and thus we find that the gap-filling provisions of the U.C.C. apply. *See Ryan v. Wersi Elecs.*

*GmbH and Co.*, 3 F.3d 174, 181 n. 3 (7th Cir. 1993).

4. Defendants also argue that if the agreement was terminable at will, then their alleged actions could not give rise to a breach of contract claim. However, plaintiff claims that it spent considerable time and effort completing its part of the bargain, and thus the agreement (as alleged) was not wholly executory. In such a case, "the duration of the agreement is determined by the agree-

objection is more substantial. Plaintiff alleges that Fleetguard and Cummins agreed to purchase all of their requirements of the new acid cleanser ISC specially developed for them, as well as all of their "secondary source requirements" for several other chemicals. The alleged quantity term concerning the newly developed acid cleanser—all of defendants' requirements—is sufficiently definite to form a binding agreement. *See* 810 ILCS 5/2–306(1). However, requirements contracts must be exclusive to be enforceable—that is, the purchaser must agree to buy all of its requirements from the seller. *Torres v. City of Chicago,* 261 Ill.App.3d 499, 197 Ill.Dec. 985, 988–988, 632 N.E.2d 54, 57–57, *app. denied,* 157 Ill.2d 523, 205 Ill.Dec. 188, 642 N.E.2d 1305 (1994); *Canteen Corp. v. Former Foods, Inc.,* 238 Ill.App.3d 167, 179 Ill.Dec. 342, 351, 606 N.E.2d 174, 183 (1992), *app. denied,* 148 Ill.2d 640, 183 Ill. Dec. 16, 610 N.E.2d 1260 (1993); *Wald v. Chicago Shippers Ass'n,* 175 Ill.App.3d 607, 125 Ill.Dec. 62, 70, 529 N.E.2d 1138, 1146 (1988). Thus, plaintiff cannot assert a breach of contract claim based on defendants' alleged promise to purchase their "secondary requirements" from ISC, since such a promise necessarily implies that defendants will also purchase additional amounts of the products in question from other sellers. Accordingly, although plaintiff's requirements claim survives, defendant's motion is granted with respect to the "secondary requirements" claim.

Defendants also argue that even if ISC has properly alleged a breach of contract claim in Count I, such a claim is barred by the statute of frauds provision of the U.C.C., 810 ILCS 5/2–201.[5] Defendants contend that this provision applies because ISC alleges a contract for the sale of at least $500 worth of goods. Plaintiff first attacks the notion that the U.C.C. applies at all, arguing that the instant contract is a "mixed" one for goods and services.[6] However, as discussed above, *supra* note 3, because the predominate purpose of this alleged agreement was for the sale of chemicals rather than for ISC's services, the U.C.C. applies. ISC next contends that the U.C.C. is satisfied by "the voluminous correspondence between the parties." Clearly, this conclusory statement is insufficient to demonstrate that the requirements of the U.C.C. have been fulfilled. Nor has our independent review of the exhibits attached to the complaint uncovered any document, signed by the defendants, which sufficiently indicates that a contract for the sale of goods was made.[7] However, at this juncture we cannot say that plaintiff will be unable to seek refuge in the judicial-admission exception to the U.C.C.'s statute of frauds. *See* 810 ILCS 5/2–201(3)(b). Nor are we inclined to grant the motion based on the present submissions, as defendants have not denied the existence of the alleged oral agreement in an answer or by affidavit. *Cf. DF Activities Corp. v. Brown,* 851 F.2d 920, 922 (7th Cir.1988) (affirming 12(b)(6) dismissal for failing to satisfy statute of frauds where defendant submitted affidavit denying existence of alleged oral agreement); *Triangle Marketing, Inc. v. Action Indus., Inc.,* 630 F.Supp. 1578, 1583–84 (N.D.Ill.1986) (dismissing claim under 12(b)(6) for failing to

ment as a whole, based on what is reasonable, and is a question for the trier of fact." *Sylvester,* 144 Ill.Dec. at 27, 554 N.E.2d at 1069.

5. Defendants also argue that Illinois' general Statute of Frauds applies because the alleged contract calls for performance to exceed one year. 740 ILCS 80/1. However, it is clear that the Statute of Frauds applies only if it would be *impossible* to perform the contract within a year. Where, as here, the alleged duties could have been performed within the first year the Statute does not apply. *See Hartbarger v. SCA Servs., Inc.,* 200 Ill.App.3d 1000, 146 Ill.Dec. 633, 643, 558 N.E.2d 596, 606, *app. denied,* 135 Ill.2d 556, 151 Ill.Dec. 382, 564 N.E.2d 837 (1990).

6. Citing *Monetti, S.P.A. v. Anchor Hocking Corp.,* 931 F.2d 1178, 1184–85 (7th Cir.1991), plaintiff argues that because the alleged agreement involves both goods and services, it is not covered by the U.C.C. statute of frauds. However, *Monetti* simply raised the possibility that the U.C.C. provision might not apply to "mixed" contracts; it did not resolve the issue, and we find no support in Illinois law for such a contention. Thus, we reject ISC's argument that the U.C.C. necessarily does not apply to contracts for both goods and services.

7. Indeed, most of the documents are hand-written notes produced by plaintiff's principles and employees, concerning the composition and characteristics of various chemicals.

satisfy statute of frauds where defendant denied existence of contract in pleadings). Rather, resolution of this issue should be deferred until defendants affirmatively deny the existence of the alleged oral agreement, *see Triangle Marketing,* 630 F.Supp. at 1583, or plaintiff can draw from defendants an admission which would permit the application of 810 ILCS 5/2–201(3)(b). *See Ruca Hardware, Ltd. v. Chien,* No. 94 C 3635, 1995 WL 307172, at *5–6 (N.D.Ill. May 17, 1995) (denying motion to dismiss until plaintiff had opportunity to depose defendants and elicit admission on existence of alleged agreement). Accordingly, defendant's motion to dismiss the remainder of Count I for failing to satisfy the U.C.C.'s statute of frauds is denied.[8]

### B. Count II (Good Faith and Fair Dealing)

■ Defendants next move to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Basically, defendants argue that if no claim for breach of contract exists, then no claim for breach of the implied covenant will lie. Although we have rejected the underlying premise of defendants' argument, and found that plaintiff has (at least in part) stated a claim for breach of contract, we nonetheless conclude that Count II should be dismissed. This is because the obligation to deal in good faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract. *See La-Scola v. U.S. Sprint Comm.,* 946 F.2d 559, 565 (7th Cir.1991) (implied duty of good faith does not create independent cause of action). Thus, ISC's breach of the implied duty of good faith cannot stand as a separate count, but must be included within its breach of contract claim in Count I. *See Stuart Park Assocs. Ltd. Partnership v. Ameritech Pension Trust,* 846 F.Supp. 701, 713–14 (N.D.Ill. 1994) (dismissing separate count for breach of implied duty of good faith because claim

was subsumed within breach of contract count). Accordingly, Count II is dismissed and plaintiff is given leave to reallege this claim in Count I.

### C. Count IV (Consumer Fraud)

■ Fleetguard and Cummins next challenge Count IV, brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1–505/12, arguing that ISC has failed to (1) allege the commission of a deceptive act in the conduct of trade or commerce contemplated by the Act, (2) file the action within the three-year statute of limitations, or (3) allege trade practices effecting the market or implicating consumer concerns generally. Because we agree with defendants' last argument, we need only discuss that issue.

Section 2 of the Consumer Fraud Act provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. As its name indicates, the Consumer Fraud Act is primarily concerned with protecting consumers.[9] *See Hill v. Names & Addresses, Inc.,* 212 Ill.App.3d 1065, 157 Ill.Dec. 66, 82, 571 N.E.2d 1085, 1101 (1991) (noting that liability under the Consumer Fraud Act is limited to " 'conduct that implicates consumer protection con-

---

8. Plaintiff also argues that Count I is saved from the U.C.C.'s statute of frauds because (1) it partially performed the alleged contract and (2) defendants misrepresented their intention to buy from ISC. As we have declined to definitively resolve the statute of frauds issue, we need not address these arguments.

9. The statute defines a consumer as one "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

cerns'") (quoting *Jay's Foods, Inc. v. Frito-Lay, Inc.,* 664 F.Supp. 364, 368 (N.D.Ill. 1987)). This fact notwithstanding, it is well established that plaintiffs need not actually be "consumers;" business have standing to bring actions under the Act as well. *See* 815 ILCS 505/1(c); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.,* 657 F.Supp. 1486, 1493 (N.D.Ill.1987). However, when the dispute involves two business, "the test for standing is whether 'the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Gadson v. Newman,* 807 F.Supp. 1412, 1421 (C.D.Ill. 1992) (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill. App.3d 524, 137 Ill.Dec. 409, 417, 546 N.E.2d 33, 41 (1989)); *Zinser v. Rose,* 245 Ill.App.3d 881, 185 Ill.Dec. 574, 578, 614 N.E.2d 1259, 1263 (1993).

 ISC does not argue that defendants' alleged misrepresentations affected consumers or otherwise implicated consumer protection concerns. Indeed, rather than attempting to demonstrate a consumer nexus to the complained of conduct, ISC challenges defendants' suggestion that such a connection is still required. In support, ISC points to a 1990 amendment to the Act, which states that "[p]roof of public injury, a pattern, or other effect on consumers generally" is not required to sustain a claim under the Act. 815 ILCS 505/10a. This amendment was passed to clarify that a plaintiff suing under the Act could state a claim based upon a single, isolated injury, and did not need to demonstrate a wide-spread effect on consumers generally. *See Royal Imperial Group, Inc. v. Joseph Blumberg & Assocs., Inc.,* 240 Ill.App.3d 360, 181 Ill.Dec. 105, 108–110, 608 N.E.2d 178, 181–83 (1992); *Rubin v. Marshall Field & Co.,* 232 Ill.App.3d 522, 173 Ill.Dec. 714, 720, 597 N.E.2d 688, 694 (1992). In other words, the amendment expanded

the scope of injuries to consumers that were cognizable under the Act; however, contrary to plaintiff's contention, it did not altogether eliminate the requirement of a connection to consumers. *See Web Comm. Group, Inc. v. Gateway 2000, Inc.,* 889 F.Supp. 316, 322 (N.D.Ill.1995); *CTS Corp. v. Raytheon Co.,* No. 92 C 3878, 1993 WL 157464, at *2–3 (N.D.Ill. May 11, 1993). Plaintiff has failed to allege the necessary nexus between the complained of conduct and consumer protection concerns, and therefore we conclude that ISC cannot state a claim under the Consumer Fraud Act. Accordingly, Count IV is dismissed.

### D. Count V (Deceptive Trade Practices)

Plaintiff also brings a claim against defendants under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1–510/7. Defendants have moved to dismiss this count, arguing that ISC has not alleged any conduct implicating the Act. Plaintiff responds that the alleged misrepresentations concerning Fleetguard's and Cummins's approval and sponsorship of ISC's products constituted violations of the Act.[10]

 However, as noted by the National Conference of Commissioners on Uniform Laws, the Uniform Deceptive Trade Practices Act is intended to deal with "conduct involving either misleading trade identification or false or deceptive advertising." 815 ILCS 510 (West 1993) (prefatory note). In other words, the Act is directed towards unfair competition and "'acts which unreasonably interfere with another's conduct of his business.'" *Phillips v. Cox,* 261 Ill. App.3d 78, 198 Ill.Dec. 338, 632 N.E.2d 668, 670 (1994) (quoting *Popp v. Cash Station, Inc.,* 244 Ill.App.3d 87, 184 Ill.Dec. 558, 564, 613 N.E.2d 1150, 1156 (1992)). Conspicuously absent from plaintiff's complaint is an

---

10. In pertinent part, the act defines deceptive trade practices to include when a person:

 (2) causes likelihood of confusion of or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

 . . . . .

 (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits or quantities that they do

not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

 . . . . .

 (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

allegation that defendants misrepresented ISC's products as their own, or confused the public as to the source or sponsors of their products. Rather, the complaint merely asserts that defendants misrepresented to ISC that if it developed chemicals that met their specifications, then they would purchase these products from the plaintiff. Because such an allegation is insufficient to state a claim under the Deceptive Trade Practices Act, defendants' motion to dismiss Count V is granted.

### E. Count VI (Fraud and Equitable Estoppel)

Finally, defendants move to dismiss Count VI brought under the common law of fraud and equitable estoppel. Defendants first argue that the statements of intent alleged in the complaint cannot, as a matter of law, provide the basis for a fraud claim. We agree.

▮▮▮▮ "The requisite elements of a common law fraud cause of action are: (1) a false statement of material fact, intentionally made; (2) the party to whom the statement was made had the right to rely on it; (3) the statement was made for the purpose of inducing reliance thereon; and (4) the reliance by the person to whom the statement was made led to his injury." *Mitchell v. Skubiak*, 248 Ill.App.3d 1000, 188 Ill.Dec. 443, 447, 618 N.E.2d 1013, 1017 (1993). Although a misrepresentation of intention to perform future conduct usually does not constitute fraud, an action for fraud will lie if the false promise of future conduct was made as part of a scheme to defraud. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 29, 545 N.E.2d 672, 682 (1989); *Louis Glunz Beer, Inc. v. Martlet Importing Co., Inc.*, 864 F.Supp. 810, 815 (N.D.Ill.1994). In order to avail oneself of this exception, however, a plaintiff must show at the pleading stage some "specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir.1992) (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F.Supp. 1366, 1369 (N.D.Ill.1985)). For example, in *Bower* the Seventh Circuit affirmed a grant of summary judgment for the defendant because, aside from the broken promise itself, the plaintiff had failed to introduce sufficient evidence indicating that the defendant never intended to keep its word. 978 F.2d at 1012.

▮▮▮▮ In this case, ISC alleges that defendants repeatedly represented that if ISC developed new products and formulations at their direction, they would make plaintiff a major supplier of such chemicals. Although plaintiff alleges that such promises and representations were false and misleading at the time they were made, Complaint ¶ 15 (Count VI), ISC fails "to point to specific, objective manifestations of fraudulent intent" on the part of defendants. Instead, plaintiff bases its fraud claim solely on the ground that defendants' alleged promise of future purchases never came to fruition. Because a claim of fraud for an alleged misrepresentation of future conduct cannot be grounded solely on the broken promise itself, *Bower*, 978 F.2d at 1012, we must grant defendants' motion to dismiss this part of Count VI.

▮▮▮▮ Defendants also move to dismiss ISC's equitable estoppel claim, arguing that the alleged promise was too indefinite to support a claim. "Equitable estoppel arises when a party, by his words or conduct, reasonably induces another to rely on his representation and, as a result of that reliance, the other changes his position to his injury." *Estate of Besinger v. Village of Carpentersville*, 258 Ill.App.3d 218, 196 Ill.Dec. 481, 491, 630 N.E.2d 178, 188, *app. denied*, 156 Ill.2d 557, 202 Ill.Dec. 920, 638 N.E.2d 1114 (1994). Essentially, ISC claims that defendants induced it to develop and manufacture new products in reliance on the promise of future sales to them, and thus Fleetguard and Cummins should be estopped to deny the existence of the contract. These allegations are sufficient to state a claim for equitable estoppel, and there is no need for the sort of definiteness that is required to assert a claim for promissory estoppel. *Cf. Demos v. National Bank of Greece*, 209 Ill.App.3d 655, 153 Ill.Dec. 856, 861, 567 N.E.2d 1083, 1088 (1991) (promissory estoppel claim dismissed because alleged promise was too indefinite to be enforceable). Moreover, the failure of

**814**

plaintiff's fraud claim does not necessarily preclude an equitable estoppel claim. *See Ceres Illinois, Inc. v. Illinois Scrap Processing*, 114 Ill.2d 133, 102 Ill.Dec. 379, 385, 500 N.E.2d 1, 7 (Ill.1986) (representation need not be "fraudulent in the strict legal sense or done with an intent to mislead or deceive" in order to be actionable under equitable estoppel) (quotation omitted). Accordingly, defendants' motion to dismiss ISC's equitable estoppel claim is denied.

### III. Motion to Strike Under Rule 8

 Defendants also move separately to strike the remaining counts in complaint as violative of Rule 8. In pertinent part, Rule 8 requires a plaintiff to include in his complaint a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R.Civ.P. 8(a)(2), and to insure that "[e]ach averment of [his] pleading[s] [is] simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). Failure to comply with the requirements of Rule 8 may justify dismissal, albeit usually without prejudice. *See Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir.1990); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988).

ISC's complaint spans sixty pages, and contains approximately 115 paragraphs, some of which span several pages. The Background section, which is incorporated into all of the six counts, contains ninety-five paragraphs alone. Much of the complaint contains material which might be relevant at trial, but which certainly need not be alleged in order to state a claim. While there is no strict limitation on the length of complaints, the instant document is far more detailed and cumbersome than necessary. Accordingly, we conclude that plaintiff should amend its complaint in order to weed out the clearly extraneous material. *See Hartz*, 919 F.2d at 471; *Dudley Enters., Inc. v. Palmer Corp.*, 822 F.Supp. 496, 500–01 (N.D.Ill.1993). Moreover, the amended complaint should incorporate the rulings made in this opinion with respect to Counts I, II, IV, V and VI. ISC is directed to file its amended complaint within fourteen days of the entry of this order.

### IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss Counts I, II, IV, V and VI is granted in part and denied in part. The motion to strike the remainder of the complaint under Rule 8 is granted, and plaintiff is ordered to file an amended complaint consistent with this opinion within fourteen days of the entry of this order. It is so ordered.