**INDUSTRIAL SPECIALTY CHEMICALS, an Illinois corporation, Plaintiff,**

v.

**CUMMINS ENGINE CO., INC., an Indiana Corporation; Fleetguard, Inc., an Indiana Corporation; Doug Hudgens and Jerry Joyner, Defendants.**

**No. 94 C 5378.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 21, 1996.

---

Alexander S. Vesselinovitch, Lisa L. Harris, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Joseph J. DeMichael, Joseph E. Daudish, James T. Ashack, Elmore & DeMichael, Oak Forest, IL, for plaintiff.

Kevin Michael Flynn, Theodore E. Harman, Phillip M. Goldberg, Coffield, Ungaretti and Harris, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Industrial Specialty Chemicals, Inc. ("ISC") brings this six-count Amended Complaint against Cummins Engine Co., its subsidiary Fleetguard, Inc. (the "Corporate Defendants"), and two of Fleetguard's employees, Doug Hudgens and Jerry Joyner (the "Individual Defendants"). Presently before this court is the defendants' motion for summary judgment on Counts I, IV, and V.[1] For the reasons set forth below, the motion is granted in part and denied in part.

### I. Background

Before discussing the material facts at issue, we briefly comment on the parties'

obligations under General Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rule 12(M)" and "Local Rule 12(N)"). According to Local Rule 12(M), a party moving for summary judgment must set forth specific, undisputed facts which it believes entitles it to judgment as a matter of law. Local Rule 12(M)(3). The non-movant must then respond to each of the movant's statements, and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a). The nonmovant is also entitled to list those facts which it believes require the denial of summary judgment, and the movant must respond in the same manner. The facts asserted in either party's statement will be deemed admitted if the opponent's responses do not cite to specific pieces of evidence supporting its position. *See Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990). In this case, the defendants do not adequately respond to several of the statements made by the plaintiff in its Local Rule 12(N) submission.[2] Rather than referring to specific pieces of admissible evidence, these responses merely cite to portions of the defendants' unverified answer to the amended complaint. Consequently, to the extent we cannot readily uncover evidence supporting these responses, the assertions made by the plaintiff will be deemed admitted.

We now proceed with a recitation of the relevant facts at issue. At bottom, this lawsuit stems from the attempts by ISC, a manufacturer and distributor of specially produced chemical products, to foster a business relationship with Cummins, a diesel engine manufacturer, and Fleetguard, a distributor of chemicals and maintenance products for diesel engines. Beginning in 1985, Dr. Jose T. Jacob, the president and founder of ISC, was approached by Doug Hudgens, Fleetguard's research and development manager,

---

1. We previously dismissed several counts of the original complaint and ordered the plaintiff to file a more concise amended complaint. *Industrial Specialty Chem. v. Cummins Engine Co.*, 902 F.Supp. 805 (N.D.Ill.1995).

2. Specifically, the defendants' responses to paragraphs 4, 16, 18, 21, 22, 25, 26, 27, 30, 31, 36, 37, 39, 41–43, 48, 50–53, 56–57, 60, 62–63, 65–70, 86, 91, and 93–94 of the plaintiff's 12(N)(b)(3) statement of additional facts fall into this category.

about providing Fleetguard with a product known as Diesel Coolant Additive ("DCA"). Although Hudgens asked for and was given samples of DCA, Fleetguard eventually decided not to place any orders for DCA with ISC. Defs.' 12(M) ¶¶ 11–14. Jacob later proposed that ISC and Fleetguard enter into a joint venture to produce similar chemical products, but the idea was rejected by Fleetguard. Defs.' 12(M) ¶ 19.

Jacob claims that despite these setbacks, he continued to propose to do work for Fleetguard because Hudgens had asked ISC to develop a novel radiator cleaner called "Restore Plus." Pl.'s 12(N)(3)(b) ¶ 16. In return for developing and marketing such a product, Jacob claims, Hudgens promised him and George Emerle, the executive vice-president of ISC, that Fleetguard would purchase 50,000 gallons of the cleaner each year, as well as various amounts of DCA and other chemical products. *Id.* ¶¶ 18, 20, 25, 44. Hudgens and Jerry Joyner, Fleetguard's Purchased Finished Manager, deny ever making such a promise. Hudgens Affd. ¶¶ 5–6; Joyner Affd. ¶¶ 4–5. ISC neither confirmed such a promise in writing nor asked the defendants to do the same. Defs.' 12(M) ¶ 15. Out of all of the correspondence between the parties during the relevant time period, the only written evidence of such promises are (1) a November 1987 handwritten note by Hudgens listing projects that he allegedly wanted ISC to perform, and (2) a 1988 or 1989 handwritten note from Hudgens listing the requirements of Restore Plus. Pl.'s 12(N)(3)(b) ¶¶ 26, 28; Exs. 17, 26. Neither of these documents mentions any promises made by the defendants or has any quantity or price terms, and both lack a signature from a representative of the Corporate Defendants. *Id.*

Jacob claims that based on Hudgens's representations, in October 1987 he offered ISC's services to Fleetguard to prepare a report on "scale inhibitors." At the time, Jacob told Fleetguard that ISC would charge "less than $3000" for the service, in part "because [ISC's] aim is to get other business

from your company." Defs.' 12(M), Ex. 7. None of the documents relating to this transaction mention any promises of future business. Fleetguard accepted ISC's offer, and the report was delivered and paid for by mid–1988. Defs.' 12(M) ¶¶ 22–24.

Jacob claims that ISC also began expending considerable time and effort on the development of Restore Plus, primarily because Hudgens, Joyner, and other employees of the Corporate Defendants continued making promises of future business if ISC was successful in its research. For example, Jacob maintains that both Hudgens and Joyner repeatedly told him that if ISC successfully developed Restore Plus and other DCA products, Fleetguard and Cummins would purchase up to 10% of their DCA business from ISC. Pl.'s 12(N)(3)(b) ¶¶ 54–55, 59. Hudgens supposedly represented to ISC that Fleetguard would purchase at least $200,000 worth of supplies from ISC annually beginning in 1990, *id.* ¶ 65, and promised Jacob that ISC would be "a major second source supplier" of various chemicals for both Fleetguard and Cummins if its efforts to improve these DCA products and develop Restore Plus were successful, *id.* ¶¶ 44–45. Jacob and Emerle also claim that Joyner and Dale Olson, a Material Manager at Fleetguard's Lake Mills plant, made similar promises at various times between 1987–90. *Id.* ¶¶ 46, 50. However, the only written evidence of these promises is a November 1989 fax transmission from Emerle to Olson and another Lake Mills employee, Bob Crane, which states:

> Dr. Jacob was informed by Doug Hudgens in a phone conversation yesterday that 10% of the Pellet business is available for ISC for 1990.

Pl.'s 12(N)(3)(b), Ex. 20.[3]

In August 1990 Fleetguard ordered from ISC 2400 gallons of Restore Plus, and paid for it after receiving the shipment in satisfactory condition. After the close of this transaction the relationship between the two companies deteriorated. Fleetguard's employees stopped returning the calls of Jacob and

---

**3.** At the time, Emerle believed that Olson and Crane had the primary authority to place purchase orders for the Lake Mills plant, and Em-

erle does not remember either of them responding to this portion of his fax message. Defs.' 12(M) ¶ 56.

Emerle, and neither Corporate Defendant placed any further orders with ISC. Jacob and Emerle sent several letters to the defendants· expressing their dissatisfaction with the status of ISC's relationship with the Corporate Defendants, but ISC did not receive a favorable response. ISC later learned that the Corporate Defendants had hired Dober, another chemical company, to supply it with Restore Plus and DCA products. In 1994 ISC filed its original six count complaint, claiming breach of contract, breach of the implied covenant of good faith and fair dealing, breach of confidentiality agreements, violation of the Illinois Consumer Fraud and Deceptive Practices Act, violation of the Illinois Deceptive Trade Practices Act, and common law fraud and equitable estoppel. After we dismissed several of the counts and struck the remainder of the complaint, ISC filed an Amended Complaint containing six counts: breach of contract (Count I), breach of confidentiality agreements (Counts II and III),[4] equitable estoppel (Count IV), quantum meruit (Count V), and misappropriation of trade secrets (Count VI).

## II. Summary Judgment Standard

 The defendants now move for summary judgment on Counts I, IV, and V, arguing that no genuine factual disputes stand in the way of judgment in their favor. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). The movant may satisfy this burden by presenting specific evidence on a material issue, or by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set forth specific .facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In ruling on a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp. (NIPSCO)*, 33 F.3d 813, 815 (7th Cir.1994), and refrain from making credibility determinations, *see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

## III. Discussion

### A. Count I (Breach of Contract)

In our prior opinion we dismissed ISC's claim that the Corporate Defendants promised to purchase their "secondary source requirements" of DCA from the plaintiff, concluding that such a promise was too indefinite to be enforceable. 902 F.Supp. at 809–810.[5] ISC's other contract claim—that Fleetguard and Cummins agreed to purchase all their requirements of Restore Plus from ISC for an indefinite period of time—was permitted to go forward, even though no written evidence of the agreement existed, as required by the U.C.C.'s statute of frauds in effect in Illinois, 810 ILCS 5/2–201.[6] We reasoned that until the

---

4. ISC contends that by 1989 both Fleetguard and Cummins asked to evaluate and test Restore Plus, but ISC wanted to protect what it believed to be *proprietary information.* ISC claims that before it turned over certain information about Restore Plus, it had Fleetguard and Cummins execute confidentiality agreements in 1989 and 1990. Pl.'s 12(N)(3)(b) ¶¶ 90–91. Although the Corporate Defendants deny that ISC requested the 1990 confidentiality agreement or that Fleetguard executed it, Defs.' 12(N) ¶ 91, they concede the existence of factual disputes which preclude summary judgment on these claims.

5. Although ISC's Amended Complaint still seeks to enforce the alleged agreements to purchase "secondary requirements," we believe these claims fail for the reasons discussed in our prior opinion.

6. Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for the sale has been made between the parties and signed by the party against whom enforcement

defendants had answered the complaint and been deposed, there still existed the possibility that they would admit the existence of the contract and thereby allow the plaintiff to seek refuge in the judicial admission exception to the statute of frauds, 810 ILCS 5/2–201(3)(b). 902 F.Supp. at 810–11.

■ The defendants have now denied the existence of the alleged agreements in their answer, as have Hudgens, Joyner, and Olson in their affidavits. Therefore, the defendants move for summary judgment on Count I, again arguing that ISC cannot satisfy the requirements of the statute of frauds. *See DF Activities Corp. v. Brown,* 851 F.2d 920, 922 (7th Cir.1988) (concluding that statute of frauds issue could be resolved once defendant denies existence of the contract). The plaintiff does not directly confront the issue by arguing that Hudgens's handwritten notes satisfy the U.C.C.'s requirement of a writing, *see Monetti, S.P.A. v. Anchor Hocking Corp.,* 931 F.2d 1178, 1181–85 (7th Cir.1991), or that Emerle's fax message to Olson and Crane constitutes a written merchant's confirmation of the agreement under 810 ILCS 5/2–201(2). Instead, ISC contends that the defendants should be equitably estopped from denying the existence of the contract between the parties, since through their promises they induced ISC to expend time and money on the development of Restore Plus. However, a claim of equitable estoppel is raised in Count IV, and the defendants' challenge to that count is discussed below. In other words, the plaintiff offers no explanation independent of Count IV as to why the U.C.C.'s statute of frauds should not apply to the claims raised in Count I. Accordingly, as we see no justification for relaxing the requirements of 5/2–201, we grant the defendants' motion for summary judgment on the breach of contract claims in Count I. *See Genin, Trudeau & Co. Ltd. v. Integra Dev. Int'l,* 845 F.Supp. 611, 616–19 (N.D.Ill.1994) (considering applicability of equitable estoppel in separate count of complaint, but dismissing separate breach of contract claim).

**B.** *Count IV (Equitable Estoppel)*

■ In Count IV of the Amended Complaint the plaintiff seeks to hold the defendants liable under a theory of equitable estoppel. ISC contends that the defendants repeatedly represented that if ISC successfully developed a formula for Restore Plus, they would purchase all of their requirements of the chemical for an unspecified period of time. Through these representations, ISC argues, the defendants induced ISC to spend considerable time and effort on the development of Restore Plus, and then took the formula from the plaintiff without compensating it for its efforts. At the outset we observe that notwithstanding its label, Count IV looks suspiciously like a claim of promissory estoppel—that is, a claim that ISC relied on the defendants' promise, that such reliance was reasonable and foreseeable, and that ISC was injured because of its reliance, *see A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.,* 956 F.2d 1399, 1404 (7th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992). However, Illinois courts are reluctant to permit the use of promissory estoppel to recover on a contract claim that fails the statute of frauds. *See Architectural Metal Sys., Inc. v. Consolidated Sys., Inc.,* 58 F.3d 1227, 1231 (7th Cir. 1995); *Evans v. Fluor Distribution Cos.,* 799 F.2d 364, 368 (7th Cir.1986); *Dickens v. Quincy College Corp.,* 245 Ill.App.3d 1055, 185 Ill.Dec. 822, 827, 615 N.E.2d 381, 386 (1993). Perhaps recognizing this uncertainty in Illinois law, ISC has tacitly disavowed any claim of promissory estoppel, instead styling Count IV exclusively in the language of equitable estoppel.

■ While it is true that a claim of equitable estoppel is not subject to the statute of frauds, *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.,* 114 Ill.2d 133, 102 Ill.Dec. 379, 385, 500 N.E.2d 1, 7 (1986); *Bradley Real Estate Trust v. Dolan Assocs. Ltd.,* 266 Ill.App.3d 709, 203 Ill.Dec. 582, 585, 640 N.E.2d 9, 12 (1994), we conclude that under the facts of this case, ISC cannot avail itself of this doctrine. To prevail on a claim of equitable estoppel a plaintiff must prove

is sought or by his authorized agent or broker....

810 ILCS 5/2–201(1).

(1) a misrepresentation or concealment of material fact, (2) the defendant's knowledge that the representations were false, (3) the defendant's intent or expectation that the representations be acted upon by the plaintiff, (4) actual reliance by the plaintiff, and (5) some injury or prejudice to the plaintiff if the defendant is allowed to deny the truth of the representations. *See Bradley Real Estate*, 203 Ill.Dec. at 585, 640 N.E.2d at 12; *M.J. Oldenstedt Plumbing Co. v. K mart Corp.*, 257 Ill.App.3d 759, 629 N.E.2d 214, 218 (1994). Although the representation or conduct at issue need not be "fraudulent in the strict legal sense or done with an intent to mislead or deceive," the plaintiff must still demonstrate that "conscience and the duty of honest dealing" requires the defendant to be bound by its representations. *Ceres*, 102 Ill.Dec. at 385, 500 N.E.2d at 7 (citation and alterations omitted); *see also Cohn v. Checker Motors Corp.*, 233 Ill.App.3d 839, 175 Ill. Dec. 98, 103, 599 N.E.2d 1112, 1117 (1992) (distinguishing equitable estoppel from promissory estoppel by noting that the former requires proof of "words or conduct amounting to a misrepresentation or concealment of material facts"). For example, the defendant in *Ceres* claimed that the plaintiff was equitably estopped from raising a statute of frauds challenge to its fifteen-year oral lease because the plaintiff had actively encouraged the defendant's development of a scrap-processing operation on the site. The Illinois Supreme Court rejected the argument because both parties had sufficient information as to the unenforceability of an oral lease, and the plaintiff's conduct did not constitute a "fraud or misrepresentation[ ]." *Ceres*, 102 Ill.Dec. at 385, 500 N.E.2d at 7. Thus, the court concluded that rather than calling for the application of equitable estoppel, the defendant's decision to develop the scrap-processing operation was "made on its own judgment and at its own risk." *Id.*

Similarly, ISC argues that the defendants promised to purchase substantial amounts of Restore Plus and DCA if ISC developed the novel radiator cleaner. ISC contends that it was encouraged by these statements to expend time, money, and energy on the development of Restore Plus. However, ISC does not offer any evidence suggesting that the defendants tricked it into not getting the agreement in writing, or misrepresented a past or present material fact. Viewed most favorably to ISC, the best the evidence could show is that the defendants misstated their future intention to purchase Restore Plus from the plaintiff. Yet such a misstatement is insufficient to demonstrate the sort of unconscionability that is required to invoke the doctrine of equitable estoppel. *See Bradley Real Estate*, 203 Ill.Dec. at 585–86, 640 N.E.2d at 12–13 (affirming trial court's rejection of equitable estoppel because party could not demonstrate misrepresentation of present or preexisting facts, or the existence of a scheme to defraud). In sum, we conclude that ISC has failed to raise a genuine issue of material fact as to the viability of its claim for equitable estoppel, and accordingly grant summary judgment to the defendants on Count IV.[7]

### C. Count V (Quantum Meruit)

 The Corporate Defendants also seek summary judgment on ISC's claim of quantum meruit in Count V of the Amended Complaint. Quantum meruit—technically a subset of the law of quasi-contract and unjust enrichment—is based on the premise that a party should not be permitted to retain the benefit of services provided by another if such retention "violates the fundamental principles of justice, equity, and good conscience." *See Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir.1990). "In order to be successful on a theory of quantum meruit under Illinois law, a party must prove performance of the services, reasonable value of the services, and the receipt by the defendant from the plaintiff of a benefit which it would be unjust for him to retain without paying the complaining party." *North American Lighting, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1259 (7th Cir.1994).

7. As we have disposed of Count IV in its entirety, we need not address the defendants' arguments for partial summary judgment.

ISC claims that it spent hundreds of hours and thousands of dollars developing Restore Plus and improving various DCA products for the Corporate Defendants. By giving material specifications and samples of these products to the defendants, ISC claims it bestowed a benefit on the defendants—that is, the availability of the formulas without the cost of developing them. For example, Hudgens testified at his deposition that Dober, the Corporate Defendants' new supplier, did not need to run as many tests on its version of Restore Plus because it could use ISC's material specifications. Hudgens Dep. at 150–51. While it is not clear the extent to which the Corporate Defendants benefited from ISC's work, *Rohter v. Passarella*, 246 Ill.App.3d 860, 186 Ill.Dec. 807, 811, 617 N.E.2d 46, 50 (1993) (measure of damages in quantum meruit is reasonable value of benefit received by defendant), there is sufficient evidence in the record from which a jury could conclude that the defendants did unjustly benefit from ISC's services.

The defendants contend that ISC cannot recover any benefits it may have bestowed on them because the parties were still negotiating over whether to use ISC as a supplier and ISC did not expect to be directly reimbursed for its "preliminary services." *See North American Fin. Group, Ltd. v. S.M.R. Enters., Inc.*, 583 F.Supp. 691, 700 (N.D.Ill. 1984). However, ISC claims that it was not merely negotiating with the Corporate Defendants, but that the defendants had actually agreed to place orders for Restore Plus and DCA if ISC provided certain services. Thus, a factual question exists over whether ISC expected compensation for its services, and we cannot resolve that issue on the record before us.

Fleetguard also argues that ISC cannot maintain both a breach of contract claim and a quantum meruit claim, since this would allow the plaintiff to seek both expectation damages and reliance damages. While it is true that a plaintiff cannot prevail on both a breach of contract claim and a quasi-contract claim dealing with the same subject matter, *see Murray v. Abt Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir.1994), there is no rule against pleading both causes of action in the alternative, *Concord Indus., Inc. v. Harvel Indus. Corp.*, 122 Ill.App.3d 845, 78 Ill.Dec. 898, 901, 462 N.E.2d 1252, 1255 (1984). In any event, given that we have granted summary judgment on Counts I and IV of the Amended Complaint, no possibility exists that ISC will recover under both contract law and quantum meruit.[8]

Finally, the defendants argue that, pursuant to 735 ILCS 5/13–205, a action in quantum meruit must be brought within five years of when the services are alleged to have been provided. *Rohter*, 186 Ill.Dec. at 813–14, 617 N.E.2d at 52–53. As the original complaint was filed on September 1, 1994, the defendants argue that ISC is precluded from recovering the value of any services rendered prior to September 1, 1989. ISC concedes the point by failing to respond to the defendants' limitations argument. *See Swedish American Hosp. v. Midwest Operating Eng'r Fringe Ben. Funds*, 842 F.Supp. 1039, 1043 (N.D.Ill.1993). Accordingly, we hold that ISC's quantum meruit claims are subject to the five-year limitations period of 5/13–205, and that ISC cannot recover for any services it provided more than five years before the filing of this action.

In sum, because material issues of fact remain in dispute as to any benefit the Corporate Defendants received because of the plaintiff's services, and whether ISC expected any compensation, summary judgment on all of Count V is inappropriate. However, we grant the defendants' motion to the extent that ISC seeks to recover for services provided to the Corporate Defendants before September 1, 1989.

## IV. Conclusion

For the reasons set forth above, we grant the defendants' motion for summary judgment on Counts I and IV, and grant in part and deny in part its motion for summary judgment on Count V. This case is set for trial on April 1, 1996 at 10:00 a.m. before

**8.** However, to the extent the defendants can prove at trial that ISC was compensated for its services pursuant to a contract—for example, the 1987 agreement to prepare a "scale inhibitors" report—ISC will not be permitted to recover the value of those services.

United States District Court Judge Samuel P. King. Status will be held before Chief Judge Aspen on February 23, 1996 at 10:00 a.m. It is so ordered.